640 A.2d 1336

**COMMONWEALTH of Pennsylvania**

v.

**Minh LA, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1993.

Filed April 29, 1994.

434

436

438

Samuel C. Stretton, West Chester, for appellant.

Anthony Pomerantz, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, and McEWEN and KELLY, JJ.

KELLY, Judge.

Appellant, Minh La, appeals from the judgment of sentence imposed following his convictions of third degree murder,[1] aggravated assault,[2] criminal conspiracy,[3] and possession of an instrument of crime.[4] We affirm.

The relevant facts and procedural history of this appeal are as follows. In the early morning of August 3, 1991, two separate groups of individuals were drinking beer and socializing in the Thomas P. McCreesh Playground at 66th Street and Kingsessing Avenue in southwest Philadelphia. The first group consisted of seven Vietnamese males and three Vietnamese females, who were congregated in the outfield around a white bucket containing beer and ice. The second group consisted of eight white males who were sitting on the concrete bleachers drinking beer. Three of the white males, Robert Sciarrillo, Brian Parker and David Reilly, walked from the concrete bleachers to the outfield where the Vietnamese group was standing. Robert Sciarrillo then began to question the Vietnamese men in an abusive and racially derogatory manner about an incident which allegedly occurred a month

1. 18 Pa.C.S.A. § 2502(c).
2. 18 Pa.C.S.A. § 2702.
3. 18 Pa.C.S.A. § 903.
4. 18 Pa.C.S.A. § 907.

earlier in which an unknown Asian male pulled a knife on Brian Parker and chased him from the playground. As the heated discussion continued, appellant and the other Vietnamese males present, co-defendant Manh Ba Hoang, co-defendant Dieu Van Nguyen, co-defendant Khoa Ho, co-defendant Tuan Huyhn, co-defendant Tho Tran and Khanh Lam,[5] speaking in Vietnamese, decided to fight the three white males. Appellant was told by the other Vietnamese males to go to his house at 6541 Kingsessing Avenue, which was directly across from the playground, to get knives. It was also determined at that time by the Vietnamese males that the Vietnamese girls present, appellant's girlfriend, Tien Huyhn, Dieu Van Nguyen's girlfriend, Hahn (Linda) Nguyen and Tho Tran's girlfriend, Sue, would leave the playground so that they would not be injured in the planned fight. The Vietnamese girls, accompanied by Tho Tran, exited the playground without any interference by the white males and stood at the entrance to the playground. Appellant then left the remaining group of Vietnamese males and walked away unimpeded by the group of three white males to his house across from the playground to get knives. Appellant, who had forgotten his door key, knocked on the front door and was admitted by his brother. After entering his home, appellant proceeded to the kitchen where he filled a white bag with knives and a meat cleaver. Appellant then walked back to the playground. While walking back to the playground, appellant passed the three girls and Tho Tran, who were standing at the entrance to the playground. Appellant handed a knife to Tho Tran and continued to where the other Vietnamese males were standing accompanied by Tho Tran.

During appellant's absence, the shouting match between the Vietnamese males and the white males, specifically Robert Sciarrillo and Brian Parker, had subsided. David Reilly, who had previously attempted to persuade Sciarrillo and Parker to leave appellant and his group alone had apparently succeeded because the white males were departing from the area.

5. Khanh Lam, who was present with the group in the playground, was tried separately and acquitted of all charges.

At this moment, appellant returned to the playground with the bag of weapons. Appellant removed a meat cleaver from the bag and dropped the bag on the ground. The other Vietnamese males then ran over to the bag from about thirty feet away, grabbed knives, and began chasing the white males around the field. During the attack, David Reilly was stabbed in the chest and back by two different weapons, piercing both of his lungs, and causing his death. Brian Parker was struck with a knife in the head from behind and required five stitches. Michael Roche, who watched the attack from the concrete bleachers and attempted to aid his friends, was attacked by appellant with a meat cleaver. Appellant struck Michael Roche with the meat cleaver above the eye and then nearly severed Roche's ear. Michael Roche also received defensive wounds on his left hand. As Michael Roche was taken from the playground by John D'Ambrosio, appellant stood on the other side of the fence, screaming and taunting them. After all the white males had fled the playground, appellant searched for a necklace that he lost during the melee. After failing to find his necklace, appellant, co-defendant Tho Tran and the three girls exited the playground, crossed the footbridge, and walked to Tho Tran's house at 6642 Paschall Avenue. Shortly thereafter, appellant was joined at Tho Tran's house by Mahn Ba Hoang, Tuan Huyhn, Dieu Van Nguyen, Khoa Ho and Khanh Lam. Dieu Van Nguyen carried the bloodied knives brought back from the playground to Tran's basement where they were cleaned. Appellant whose shirt was covered with blood, claimed to have hit one of the white males in the neck and stated he had cut off another's ear. Sometime later, appellant left Tran's basement with the knives and his girlfriend, Tien Huyhn, and was driven home by Khanh Lam.

On September 19, 1991, appellant gave a statement to police in which he claimed that he was home sleeping when the stabbing occurred. On September 24, 1991, after realizing that the police knew his first statement was false, appellant gave a second statement to police. In his second statement, appellant admitted his first statement had been false. Appel-

lant then gave his version of how the events on the morning of August 3, 1991 transpired. Appellant stated he and his friends were attacked by Brian Parker and Robert Sciarrillo with David Reilly standing in the background doing nothing. Appellant then stated he and his friends agreed that the girls should leave the playground and that appellant would go home and get knives. Appellant stated to police that he returned to the playground and threw down the knives which were picked up by his friends. Appellant then stated that he and his friends began chasing the white youths. Appellant, in his statement, also claimed that one of the white youths hit him with a beer bottle and another attempted to choke him. Appellant stated that while attempting to defend himself, he swung a meat cleaver at the white youth who hit him with the beer bottle, cutting this white youth's ear. Appellant then stated that after the white youths fled the scene, he attempted to find a necklace he lost during the altercation.

In his statement, appellant further elaborated that while he and his friends were in co-defendant Tho Tran's basement after the incident, co-defendant Dieu Van Nguyen said, "I think I stabbed one of the kids." Appellant also stated that co-defendant Manh Ba Hoang said, "I stabbed one of the kids too." While co-defendant Tuan Huynh stated that at the time he threw the knife at a white kid, he was not sure whether he hit him or not.[6]

Appellant was arrested and charged with one count of murder, one count of possession of an instrument of a crime, one count of conspiracy, two counts of aggravated assault, and two counts of recklessly endangering another person. Appellant filed an omnibus pretrial motions seeking to suppress his statement to police. The motion was denied. Appellant also filed a motion to challenge the jury array alleging the system of selecting jurors in Philadelphia County discriminated against persons of Asian extraction. A hearing was held at which the Jury Commissioner of Philadelphia, Michael J. McAllister, Esquire, testified concerning the system utilized

6. When appellant's statement was read at trial, all references to the names of his co-defendants were redacted.

for compiling the jury arrays. The trial court held the system utilized in Philadelphia County did not discriminate against Asians and denied appellant's motion. A jury was then selected and a month long trial was held. During the course of the trial, appellant chose to testify in his own behalf. At this point, appellant's co-defendants filed motions for severance. These motions were denied.

In his direct testimony, appellant stated that he and his friends were confronted by three males while they were standing in the outfield. Appellant further testified that one of the white males, Robert Sciarrillo, punched Khanh Lam in the face. Appellant also testified that none of the white males tried to stop him when he left the playground to go home and get knives for his friends. In his testimony, appellant also stated on numerous occasions that he walked home to get the knives because he was fearful for his own and his friends lives. Appellant further testified that all of his co-defendants, except Khoa Ho, ran over to the bag to get knives when he returned to the playground and that there was nothing to prevent them from leaving the playground at that time. Appellant then testified he and his co-defendants chased the white males. Appellant further testified that he accidently cut a white male's ear while two white males were holding him. Appellant also testified that he did not kill David Reilly. Finally, appellant testified that co-defendant Manh Ba Hoang stated that he stabbed a white kid, while Tuan Huyhn stated he threw a knife at a white guy. On cross-examination, when confronted with his prior statement to police, appellant denied that he told police that Dieu Van Nguyen claimed to have stabbed one of the white kids.

The jury returned a verdict finding appellant guilty of third degree murder, one count of aggravated assault, criminal conspiracy and possession of an instrument of a crime. Appellant was acquitted of another aggravated assault charge. Post-trial motions were denied. Appellant was sentenced to terms of imprisonment of eight to twenty years for the third-degree murder conviction, a consecutive term of four to ten years for the aggravated assault conviction, and concurrent

terms of three to ten years imprisonment for criminal conspiracy and one to two years imprisonment for possession of an instrument of a crime. This timely appeal followed.

On appeal, appellant raises the following issues for our review:

1. DID JUDGE SAVITT ERR DURING HIS INSTRUCTIONS TO THE JURY WHEN HE FAILED TO GIVE THE FOLLOWING CHARGES:

 (A) WHEN HE FAILED TO GIVE A MERE PRESENCE CHARGE;

 (B) WHEN HE FAILED TO CLEARLY INSTRUCT THE JURY THERE MUST BE A SHARED INTENT FOR ACCOMPLICE AND CONSPIRACY LIABILITY;

 (C) WHEN HE, IN DEFINING JUSTIFICATION ADVISED THE JURY THAT ONLY THE CONDUCT OF DAVID REILLY COULD BE CONSIDERED AND WHEN HE REFUSED TO CHARGE THAT JUSTIFICATION COULD BE A DEFENSE BY THE CONDUCT OF OTHERS ACTING IN CONCERT WITH DAVID REILLY.

2. DID THE ASSISTANT DISTRICT ATTORNEY, IN HIS SPEECHES, MAKE IMPROPER COMMENTS INCLUDING COMMENTS AND ACTIONS OF AN INFLAMMATORY NATURE THEREBY DENYING MINH LA HIS RIGHT TO DUE PROCESS AND A FAIR HEARING?

3. A. WAS MINH LA DENIED HIS RIGHT TO DUE PROCESS AND A FAIR HEARING WHEN OTHER DEFENSE COUNSEL MADE INFLAMMATORY AND IMPROPER COMMENTS ABOUT HIM AND ESSENTIALLY TOLD THE JURY HE WAS NOT TRUTHFUL, THEREBY DENYING HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL?

 B. DID THE TRIAL COURT IMPROPERLY ALLOW CO-DEFENDANTS' COUNSEL AND THE PROSECUTION TO EXCEED THE LIMITED DIRECT EXAMINATION OF MINH LA'S CHARACTER WIT-

NESS, THEREBY PREJUDICING HIM AND DENYING HIM HIS RIGHT TO DUE PROCESS AND A FAIR HEARING?

4. WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE AND WAS THE EVIDENCE INSUFFICIENT TO SUPPORT THE VERDICT?

5. DID JUDGE SAVITT ERR IN NOT GRANTING MINH LA'S CHALLENGE TO THE JURY ARRAY SINCE THE SELECTION PROCESS WAS NOT DONE IN A RANDOM COUNTY-WIDE BASIS, ONLY CERTAIN WARDS WERE AVAILABLE AT ANY GIVEN TIME AND THE PROCESS RESULTED IN NOT HAVING A FAIR CROSS-SECTION OF THE COMMUNITY AND UNDER-REPRESENTATION OF ASIANS AND MINORITIES ON THE JURY PANELS IN DENIAL OF MINH LA'S RIGHT TO EQUAL PROTECTION, RIGHT TO DUE PROCESS, AND RIGHT TO A CROSS-SECTION OF THE COMMUNITY?

(Appellant's Brief at 3–4).

In his first issue on appeal, appellant contends that the trial court committed error in its instructions to the jury. Specifically, appellant maintains that the trial court erred by failing to give a separate general mere presence instruction with its conspiracy charge. Appellant further claims that the trial court erred by failing to clearly instruct the jury that there must be a shared intent to commit murder before accomplice or conspiracy liability for this crime will attach. Finally, appellant claims that the trial court erroneously defined the justification defense by advising the jury that only the conduct of the decedent, David Reilly, toward the defendants could be considered and improperly refused to charge that the conduct of the other white males who acted in concert with the decedent could be considered when determining if the killing of David Reilly was justified.

■■■■ Appellate review of a trial court's charge must involve consideration of the charge as a whole to determine whether it was fair and complete. *Commonwealth v. Saun-*

*ders,* 529 Pa. 140, 602 A.2d 816 (1992); *Commonwealth v. Faulkner,* 528 Pa. 57, 595 A.2d 28 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). This review does not focus upon whether specific "magic words" were part of the charge. *Commonwealth v. Saunders, supra* 529 Pa. at 144, 602 A.2d at 818; *Commonwealth v. Ohle,* 503 Pa. 566, 582, 470 A.2d 61, 70 (1983). Rather, it is the effect of the charge in its entirety that is controlling. *Commonwealth v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273 (1990); *Commonwealth v. Myers,* 424 Pa.Super. 1, 621 A.2d 1009 (1993). A trial court is free to choose its own form of expression when instructing the jury; a defendant has no right to specify the exact language which the trial court must employ. *Commonwealth v. McComb,* 462 Pa. 504, 341 A.2d 496 (1975); *Commonwealth v. Alvin* 357 Pa.Super. 509, 516 A.2d 376 (1986), *alloc. denied,* 515 Pa. 603, 529 A.2d 1078 (1987). So long as the trial court's jury charge fully and adequately explains the relevant legal principles which to apply to the evidence presented at trial, the charge is correct and will be upheld on appeal. *Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120 (1987), *appeal denied,* 518 Pa. 617, 541 A.2d 744 (1988).

■ In the first part of his first issue on appeal, appellant asserts that he is entitled to a new trial because the trial court only gave a mere presence instruction in the context of the accomplice liability charge and should have, once again, included mere presence instruction in its conspiracy charge. Appellant asserts that because being merely present at the scene of a crime is not, in and of itself, a sufficient basis for a conspiracy conviction, the trial court erred by failing to add a mere presence instruction to its conspiracy charge. We disagree.

■ The law is clear that a defendant cannot be convicted of a crime where the only evidence to connect him with the crime is "mere presence" at or near the scene. *Commonwealth v. Durah–El,* 344 Pa.Super. 511, 517, 496 A.2d 1222, 1226 (1985); *Commonwealth v. Stores,* 317 Pa.Super. 109, 117–18, 463 A.2d 1108, 1112–13 (1983); *Commonwealth v. Knox,*

273 Pa.Super. 563, 570, 417 A.2d 1192, 1193 (1980). The converse is that something more than "mere presence" at the scene of the crime must be shown to convict one of the participants in the commission of the crime. *Commonwealth v. Durah–El, supra,* 344 Pa.Super. at 517, 496 A.2d at 1226 (citing *Commonwealth v. Lovette,* 271 Pa.Super. 250, 255, 413 A.2d 390, 392 (1979), *reversed on other grounds,* 498 Pa. 665, 450 A.2d 975 (1982)). It does not follow, as a corollary of this rule, that the jury must be instructed in every case that "mere presence" is insufficient to convict. *Commonwealth v. Durah–El, supra,* 344 Pa.Super. at 517, 496 A.2d at 1226. Where a jury is fully and adequately instructed on the elements of a crime, and where it appears that a charge on "mere presence" is not essential to their understanding of the case, the trial court may refuse to issue a specific instruction on mere presence. *Commonwealth v. Markle,* 368 Pa.Super. 142, 152, 533 A.2d 756, 761 (1987), *appeal denied,* 518 Pa. 638, 542 A.2d 1367 (1988); *Commonwealth v. Durah–El, supra,* 344 Pa.Super. at 518, 496 A.2d at 1226.

Our review of the trial court's conspiracy charge as a whole reveals that the charge did convey to the jury that a defendant does not become criminally liable for merely being at the scene of a crime or merely knowing about a crime. The charge fully explained to the jury that a criminal conspiracy occurs when two or more people agree to help take part in the commission of a crime, that there must be some action taken by one member of the conspiratorial group in furtherance of this agreement and that if the jury finds a conspiracy existed, then the acts of each member of the group is an act of everyone involved in the conspiracy. *See Commonwealth v. Robinson,* 284 Pa.Super. 152, 425 A.2d 748 (1980). Thus, the trial court did not commit error by refusing to accede to appellant's desire that the trial court include a separate "mere presence" instruction with the jury on the elements of conspiracy.

Moreover, this particular defendant was not entitled to receive a mere presence instruction under any circumstances. Appellant's own testimony revealed that he was more than

merely present at the scene when the crime occurred. In his testimony, appellant admitted going to his home, getting the knives, and delivering them to the playground for his co-conspirators' use. Appellant also admitted to stabbing at least one of the victims. *See Commonwealth v. Knox, supra* (defendant not entitled to a mere presence instruction where the evidence established that he participated in the charged crime).

█ In the next part of his first issue on appeal, appellant contends that the trial court failed to give the jury an appropriate explanation of the concept of shared intent. Appellant argues that the trial court's charge that if the jury found that he shared the intent with his co-conspirators to commit aggravated assault, that would be sufficient to convict of murder as conspirator was an erroneous statement of the law. Appellant asserts that he must have had a shared intent to kill before he can be convicted of conspiracy to commit murder. We disagree.

█ All theories of vicarious responsibility for criminal conduct require the existence of a shared criminal intent. *Commonwealth v. Bachert,* 271 Pa.Super. 72, 78, 412 A.2d 580, 583 (1979). The nexus which renders all members of a criminal conspiracy responsible for the acts of any of its members is the unlawful agreement. *Commonwealth v. Cox,* 466 Pa. 582, 586, 353 A.2d 844, 846 (1976); *Commonwealth v. Yobbagy,* 410 Pa. 172, 188 A.2d 750 (1963). The law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided it is accomplished in the furtherance of the common design. *Commonwealth v. Robinson,* 351 Pa.Super. 309, 316, 505 A.2d 997, 1001 (1986); *Commonwealth v. Bachert, supra,* 271 Pa.Super. at 77, 412 A.2d at 583. In discussing conspiratorial accountability, our Supreme Court has held:

When there is evidence that one, who has not struck the fatal blow, has, nonetheless, shared in the criminal intent and the criminal activity, that person has aided and abetted in the commission of the crime and, thus, may be held

responsible as an accomplice to another's acts and the consequences of those acts. *Commonwealth v. Rife,* 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Wilson,* 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Lowry,* 374 Pa. 594, 98 A.2d 733 (1953). *"The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all."* Commonwealth v. Strantz, 328 Pa. 33, 40, 195 A. 75, 79 (1937).

*Commonwealth v. Vaughn,* 459 Pa. 35, 39–40, 326 A.2d 393, 395 (1974). Accordingly, despite the fact that an individual co-conspirator did not contemplate a killing, where such killing is a natural and probable consequence of a co-conspirator's conduct, murder is not beyond the scope of the conspiracy. *Commonwealth v. Bigelow,* 416 Pa.Super. 449, 455, 611 A.2d 301, 304 (1992); *Commonwealth v. Riley,* 330 Pa.Super. 201, 212, 479 A.2d 509, 515 (1984). Thus, the trial court's instruction that if appellant shared the intent with his co-conspirators to commit aggravated assault on the victims and one of the victims was killed as a result of this attack, appellant is criminally responsible for the act of his cohorts, is a proper statement of the law. Therefore, the trial court's instruction on shared intent was proper.

■ In the third and final part of his first issue on appeal, appellant maintains that the trial court erroneously instructed the jury that a justification defense was warranted only if appellant and his co-defendants believed that they were in immediate danger of death or serious bodily injury from the decedent, David Reilly. Appellant asserts that the trial court should have instructed the jury that if appellant and his co-defendants believed that David Reilly or others with whom the decedent either acted in concert or appeared to be acting in concert placed appellant and his co-defendants in danger of death or serious bodily harm, the slaying was justified.

■ A jury charge on self-defense must be given upon request in a criminal prosecution where the jury would have possible basis for it. *Commonwealth v. Brown,* 491 Pa. 507, 421 A.2d 660 (1980); *Commonwealth v. Mayfield,* 401 Pa.Su-

per. 560, 585 A.2d 1069 (1991). In order for instructions on self-defense to be appropriate, some evidence of such defense, from any source, must have been presented. *Commonwealth v. Terrell,* 276 Pa.Super. 136, 419 A.2d 133 (1980). Use of deadly force in defense of self or another cannot be justified unless the actor or actors reasonably believe that such force is necessary to avoid death or serious bodily harm. *Commonwealth v. McGuire,* 487 Pa. 208, 409 A.2d 313 (1979). A claim that a homicide constitutes a justifiable defense of oneself or another requires that the slayer: (1) be free from fault in provoking or continuing the difficulty which resulted in the slaying; (2) reasonably believe that there is a danger of death or great bodily harm; and (3) has not violated any duty to retreat or avoid the danger. *Commonwealth v. Black,* 474 Pa. 47, 53, 376 A.2d 627, 630 (1977); *Commonwealth v. Laurin,* 269 Pa.Super. 368, 373, 409 A.2d 1367, 1369 (1979). To warrant taking a life in self-defense, there must be a reasonable ground for belief, upon the part of the slayer, that he is in imminent danger of loss of his own life or of suffering serious bodily harm at the hands of the person killed. *Commonwealth v. Russogulo,* 263 Pa. 93, 107, 106 A. 180, 186 (1919). Because the right to take a human life is dependent upon the surrounding circumstances, persons acting in defense of others are in the same situation and upon the same plane, as those who act in defense of themselves. *Id.* at 107, 106 A. at 186.

Although the trial court's justification instruction was not in the exact form desired by appellant, the charge, when read as a whole, adequately conveyed to the jury that appellant and his co-defendants were entitled to use deadly force against David Reilly, Michael Roche and Brian Parker if they reasonably or mistakenly believed that they were in immediate danger of death or serious bodily harm at the hands of these men. The jury was also instructed during the justification charge that Robert Sciarrillo's convictions of the crimes of ethnic intimidation and criminal mischief may be utilized to show that he may have had violent propensities on the morning in question. Thus, the justification charge fully conveyed

to the jury that if appellant and his co-defendants reasonably or mistakenly believed that the actions of David Reilly, Michael Roche, Brian Parker and Robert Sciarrillo placed them in immediate danger of death or serious bodily harm, they would be justified in using deadly force to protect themselves and each other. Therefore, the trial court's justification charge was proper and appellant's challenge to this charge is without merit.

In his second issue on appeal, appellant contends that the assistant district attorney's comments and actions during his closing argument were of such an inflammatory and improper nature as to deprive appellant of his right to due process and fair hearing. Appellant argues that the assistant district attorney improperly inflamed the jury by showing them a picture of the decedent which had not been shown to the jury at trial and had been admitted into evidence only for the purpose of enabling the witnesses to identify the decedent. Appellant further claims that the assistant district attorney made improper comments concerning the tremendous pressure that was placed on the Commonwealth's witness and appellant's former girlfriend, Tien Huynh, as an explanation for why her testimony was not as favorable to the Commonwealth on cross-examination as it had been on direct examination. Thus, appellant asserts that the assistant district attorney's improper actions and comments deprived him of a fair trial. We disagree.

The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court and will not be reversed absent a flagrant abuse of that discretion. *Commonwealth v. Gonzales*, 415 Pa.Super. 564, 609 A.2d 1368 (1992); *Commonwealth v. Nelson*, 389 Pa.Super. 417, 567 A.2d 673 (1989), *appeal denied*, 527 Pa. 623, 592 A.2d 44 (1990). A mistrial is required only when an incident is of such nature that its unavoidable effect is to deprive the defendant of a fair trial. *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630 (1991); *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603 (1986). A mistrial is not warranted when the event at trial which is alleged to have caused the prejudice to the defendant

is of a speculative nature. *Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984); *Commonwealth v. Howard,* 375 Pa.Super. 43, 543 A.2d 1169 (1988); *see also Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491 (1988).

> With regard to the prosecutor's closing argument, a new trial is required only when a prosecutor's improper remarks are prejudicial, *i.e.,* when they are of such a nature or delivered in such a manner that they may reasonable be said to have deprived the defendant of a fair and impartial trial. *Commonwealth v. Howard,* 375 Pa.Super. 43, 543 A.2d 1169 (1988). In *Commonwealth v. Johnson,* 516 Pa. 527, 533 A.2d 994 (1987), the Pennsylvania Supreme Court reaffirmed the use of the "unavoidable prejudice test" as articulated in *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975) to determine the impact of prejudice in closing arguments.

*Commonwealth v. Davis,* 381 Pa.Super. 483, 495–96, 554 A.2d 104, 111 (1989). Prosecutorial comments, therefore, constitute reversible error only where the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that the jury is unable to weigh the evidence objectively and render a true verdict. *Commonwealth v. Faulkner, supra,* 528 Pa. at 77, 595 A.2d at 39. *Commonwealth v. Cottam,* 420 Pa.Super. 311, 616 A.2d 988 (1992); *Commonwealth v. Little,* 418 Pa.Super. 558, 614 A.2d 1146 (1992), *appeal denied,* 533 Pa. 608, 618 A.2d 399 (1992); *Commonwealth v. Fielder,* 417 Pa.Super. 455, 612 A.2d 1028 (1992), *appeal denied,* 533 Pa. 630, 621 A.2d 577 (1993).

During closing argument, a prosecutor may comment on the credibility of a Commonwealth's witness, especially where that witness' credibility is attacked by the defense. *Commonwealth v. Barren,* 501 Pa. 493, 498, 462 A.2d 233, 235 (1983); *Commonwealth v. McKendrick,* 356 Pa.Super. 64, 514 A.2d 144 (1986), *appeal denied,* 514 Pa. 629, 522 A.2d 558 (1987). In his or her closing argument, it is permissible for a prosecutor to ask the jury to consider any motive a witness may have to testify falsely. *Commonwealth v. Van Cliff,* 483

454

Pa. 576, 397 A.2d 1173 (1979), *cert. denied,* 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979); *Commonwealth v. Brauner,* 381 Pa.Super. 265, 553 A.2d 458 (1989), *appeal denied,* 522 Pa. 617, 563 A.2d 886 (1989). A prosecutor may also ask a jury, in his or her closing argument, to consider intangibles such as a witness' demeanor while testifying when assessing that witness' credibility. *Commonwealth v. Sparks,* 351 Pa.Super. 320, 327, 505 A.2d 1002, 1006 (1986). Additionally, any implication raised in a prosecutor's closing argument that defense counsel had somehow tampered with the witness' testimony prior to her taking the stand would be improper but is not of sufficient magnitude to warrant the grant of a new trial. *Commonwealth v. Gibson,* 271 Pa.Super. 499, 502, 414 A.2d 364, 366 (1979), *affirmed,* 500 Pa. 231, 455 A.2d 634 (1983).

 Instantly, when, during his closing argument, the prosecutor attempted to show the jury the victim's photograph, he was stopped by appellant's timely objection and motion for a mistrial. The trial court then sustained appellant's objection and told the prosecutor that under no circumstances would he be permitted to show the victim's picture to the jury. Appellant's motion for a mistrial, however, was denied based on the trial court's ruling that the jury had not seen the victim's picture. Although appellant is insistent in his claim that the jurors were actually shown the victim's picture, the trial court's vantage point as to what actually occurred in the courtroom is far superior to our distant perch in an appellate court. Additionally, there is nothing in the record to indicate that the victim's picture was seen by the jury. Accordingly, because of the speculative nature of the appellant's claim and the trial court's far superior position to determine whether the jurors actually were shown the victim's picture, we hold that the trial court did not abuse its discretion by denying appellant's motion for mistrial. *See Commonwealth v. Lark, supra* (mere possibility that a prejudicial event may have occurred during trial is not a sufficient basis for the grant of a new trial).

■ Additionally, appellant's claim that the prosecutor improperly suggested in his closing argument that appellant's counsel pressured the Commonwealth's witness, Tian Huynh, to change her testimony on cross-examination from that which was elicited on direct examination warrants the award of a new trial is without merit. During his closing argument, the prosecutor commented that Ms. Huynh's demeanor was much different under cross-examination. Such a comment is permissible in a closing argument as a prosecutor may ask a jury to consider intangible factors such as a witness' demeanor while testifying when assessing that witness' credibility. *See Commonwealth v. Sparks, supra* 351 Pa.Super. at 327, 505 A.2d at 1006. Additionally, any oblique implication contained in the prosecutor's closing argument that appellant's counsel somehow pressured the witness to change her testimony on cross-examination, while improper, is not of sufficient magnitude to warrant the grant of a new trial. *See Commonwealth v. Gibson, supra* 271 Pa.Super. at 502, 414 A.2d at 366.

■ In his third issue on appeal, appellant contends that he was denied his right to due process and a fair trial because of comments made by counsel for his co-defendants during closing arguments and because the cross-examination of one of his character witnesses purportedly exceeded the scope of direct examination. Appellant argues that co-defendants' counsel asserted defenses that were directly antagonistic towards his own defense by attempting to discredit him and his character witnesses. Appellant claims that he did not request a pre-trial severance because he did not anticipate that co-defendants were going to present defenses that were antagonistic to his defense. Thus, appellant requests that this Court apply the severance standard to the issue of whether he is entitled to a new trial on the basis of the comments made during closing arguments by the lawyers for his co-defendants.

The decision whether to sever the trials of co-defendants rests within the sound discretion of the trial judge and will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Patterson,* 519 Pa. 190, [194],

546 A.2d 596, 599 (1988); *Commonwealth v. Morales,* 508 Pa. 51, 61, 494 A.2d 367, 372 (1985); *Commonwealth v. Thomas,* 346 Pa.Super. 11, 19, 498 A.2d 1345, 1349 (1985). "A joint trial of co-defendants is 'advisable when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants.'" *Id.,* 346 Pa.Super. at 19, 498 A.2d at 1349, *citing Morales,* 508 Pa. at 61, 494 A.2d at 372. The probability of antagonistic defenses is a factor that a trial court must consider in deciding whether to grant a severance. *Morales,* 508 Pa. at 62, 494 A.2d at 373.

*Commonwealth v. Doa,* 381 Pa.Super. 181, 204, 553 A.2d 416, 427 (1989). The mere fact that there is hostility between defendants or that one may try to save himself at the expense of another is not sufficient grounds to require separate trials. *Commonwealth v. Chester,* 526 Pa. 578, 590, 587 A.2d 1367, 1373 (1991); *Commonwealth v. Bennie,* 352 Pa.Super. 558, 566, 508 A.2d 1211, 1215 (1986). Defenses becomes antagonistic only when the jury, in order to believe the essence of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony of his co-defendant. *Commonwealth v. Chester, supra,* 526 Pa. at 590, 587 A.2d at 1373.

A request for severance must ordinarily be made in the omnibus pretrial motion or it is considered waived. Pa. R.Crim.P. 306; *Commonwealth v. Brown,* 288 Pa.Super. 171, 431 A.2d 343 (1981). A motion for severance made after trial has proceeded and the testimony of several witnesses had been taken is untimely. *Commonwealth v. Bruno,* 203 Pa.Super. 541, 201 A.2d 434 (1964), *cert. denied,* 379 U.S. 965, 85 S.Ct. 656, 13 L.Ed.2d 558 (1965); *Commonwealth v. Flaherty,* 167 Pa.Super. 19, 74 A.2d 506 (1950); *Commonwealth v. Dugan,* 167 Pa.Super. 22, 74 A.2d 508 (1950). A belated motion to sever will not be granted on the basis that defendant's counsel failed to anticipate events occurring at trial. *Commonwealth v. Doa, supra,* 381 Pa.Super. at 205, 553 A.2d at 428.

■ Instantly, appellant did not include a motion for severance in his omnibus pretrial motion. Nor did he ever request a severance during the course of the trial. Thus, his failure to anticipate co-defendants' counsel's rigorous cross-examination of his character witness and comments pertaining to his own credibility does not allow us to apply the severance standard to the question of whether he is entitled to a new trial.

■ Moreover, appellant is not entitled to relief on the basis of the comments of co-defendants' counsel during their respective closing arguments. The comments of co-defendants' counsel were merely fair comment on the evidence elicited at trial. Just as a prosecutor is permitted in his or her closing argument to comment on the evidence and any reasonable inference therefrom, *see Commonwealth v. Howard*, 375 Pa.Super. 43, 543 A.2d 1169 (1988), *appeal denied*, 522 Pa. 573, 559 A.2d 35 (1989); *Commonwealth v. Durah–El*, *supra*, so may defense counsel. Additionally, defense counsel is entitled, like the prosecution, to question in closing argument, the motives and credibility of any witness. *See Commonwealth v. Van Cliff, supra; Commonwealth v. Brawner, supra.* Accordingly, the fact that the witness whose credibility and motives for testifying are called into question during closing arguments by defense counsel are those of a co-defendant does not entitle that particular defendant to a new trial.

■ Finally, appellant's main defense, which was self-defense and defense of others, and those of his co-defendants, which was either self-defense and defense of others or mere presence, were not antagonistic toward each other. If the jury had believed appellant's testimony that all actions that he took on the morning of August 3, 1991, were taken with the reasonable belief that he and his co-defendants were in imminent danger of death or serious bodily harm at the hands of the white males present in the playground, both appellant and his co-defendants would have been acquitted of all charges against them. As appellant's co-defendant's offered no evi-

dence on their own behalf that would have contradicted appellant's theory of the case, their defenses were not antagonistic and contradictory to appellant's defense. *See Commonwealth v. Bennie, supra,* 352 Pa.Super. at 566, 508 A.2d at 1215 (to be entitled to a separate trial a defendant must establish that his defense and those of his co-defendants are irreconcilable, exclusive and conflicting in the case).

▆▆▆ Next, we will address the point raised in appellant's third issue that the trial court improperly allowed the prosecutor and co-defendants' counsel to cross-examine appellant's character witness, Trong Troung, beyond the scope of appellant's direct examination of this witness. Appellant asserts the trial court's failure to limit the prosecutor and co-defendant's, Khoa Ho's, counsel to matters brought out on the direct examination of this character witness entitles appellant to a new trial.

▆▆▆ The scope and manner of cross-examination is within the sound discretion of the trial judge whose decision will not be overturned absent an abuse of discretion. *Commonwealth v. Birch,* 532 Pa. 563, 616 A.2d 977 (1992); *Commonwealth v. Tyler,* 402 Pa.Super. 429, 587 A.2d 326 (1991). Ordinarily, cross-examination of witnesses is limited to matters brought out on direct examination, with an exception that questions outside the scope of direct examination are permitted to show bias on the part of a witness. *Commonwealth v. Cheatham,* 429 Pa. 198, 239 A.2d 293 (1968); *Commonwealth v. Katsafanas,* 318 Pa.Super. 143, 464 A.2d 1270 (1983).

Instantly, our review of the transcript of Trong Troung's direct examination reveals that appellant's counsel questioned this character witness regarding whether appellant's eye was cut on the morning of August 3, 1991. (N.T. 6/22/91 at 1642). As appellant's counsel opened the door to inquiry on the question of whether appellant's eye was cut on August 3, 1991, he can not complain on appeal that the prosecutor's and co-defendants' counsel cross-examined the witness regarding appellant's cut eye. Thus, appellant's claim that the trial court improperly permitted the prosecutor and co-defendants' coun-

sel to cross-examine appellant's character witness, Trong Troung, on matters beyond the scope of his direct examination is without merit.

In his fourth issue on appeal, appellant maintains that the evidence was insufficient to support the verdict that he was guilty of third degree murder. Appellant argues that the evidence shows only that he was present in the playground at the time the decedent was killed. Appellant asserts that there was no evidence that he shared any intent to inflict death or serious bodily injury upon the decedent. Appellant also asserts that his conviction of third degree murder was contrary to the weight of the evidence.

In reviewing the sufficiency of the evidence to support a conviction, the evidence must be viewed in the light most favorable to the Commonwealth, and the Commonwealth is entitled to all favorable inferences which may be drawn from the evidence. *Commonwealth v. Hanes*, 361 Pa.Super. 357, 361, 522 A.2d 622, 623–24 (1987); *Commonwealth v. Reddix*, 355 Pa.Super. 514, 519, 513 A.2d 1041, 1045 (1986); *Commonwealth v. Duffy*, 355 Pa.Super. 145, 154–55, 512 A.2d 1253, 1260–61 (1986). If a jury could have reasonably determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict. *Commonwealth v. Gerulis*, 420 Pa.Super. 266, 273, 616 A.2d 686, 689 (1992); *Commonwealth v. Berkowitz*, 415 Pa.Super. 505, 515, 609 A.2d 1338, 1343 (1992).

As we stated in our discussion of conspiratorial accountability in the context of the jury instruction, when there is evidence that one who has not struck a fatal blow has, nevertheless, shared in the criminal intent and the criminal activity, that person has aided and abetted in the commission of the crime and may be held responsible as an accomplice for the acts of another and the consequence of those acts. *Commonwealth v. Vaughn, supra* 459 Pa. at 39–40, 326 A.2d at 395. The slightest amount of concert or collusion between the parties to an illegal action makes the act of one member of the group an act of all members. *Id.* Therefore, although an

individual co-conspirator did not contemplate that a killing would occur, where a killing is a natural and probable consequence of a co-conspirator's conduct, murder is not beyond the scope of the conspiracy. *Commonwealth v. Bigelow, supra* 416 Pa.Super. at 455, 611 A.2d at 304; *Commonwealth v. Riley, supra* 330 Pa.Super. at 212, 479 A.2d at 515.

Instantly, the evidence elicited at trial demonstrated that appellant entered into a conspiracy with his co-defendants to attack with knives the white youths present in the playground. In furtherance of this conspiracy, appellant left the playground unimpeded by the white youths whom he claimed were attacking his friends and walked a short distance to his home to get knives and a meat cleaver. Appellant then returned to the playground with the weapons which were then used by appellant and his co-conspirators to attack the white youths. During this attack in which appellant admitted to nearly cutting off the ear of Michael Roche, one of the white youths, David Reilly, was killed. As a killing was a natural and probable consequence of the armed attack upon the white youths, the fact that appellant himself did not inflict the fatal wounds upon the decedent does not excuse him from criminal liability for the murder when the fatal wounds were inflicted by other members of the conspiratorial group. *See Commonwealth v. Mobley*, 467 Pa. 460, 359 A.2d 367 (1976) (evidence sufficient to support conviction for third degree murder where knife-wielding defendant joined in on an attack of a rival gang even though fatal blows to the victim were struck by a fellow gang member).

Next, appellant asserts that his conviction of third degree murder is against the weight of the evidence. This claim has been waived due to appellant's failure to provide argument in support of this claim in his appellate brief. *Commonwealth v. Cherpes*, 360 Pa.Super. 246, 266 n. 2, 520 A.2d 439, 449 n. 2 (1987).

Moreover, appellant's claim that the verdict is contrary to the weight of the evidence is without merit. The decision to grant or deny a motion for a new trial on the ground that the verdict is against the weight of the evidence is

committed to the trial court's sound discretion. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982); *Commonwealth v. Taylor*, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984). The test is not whether this Court would have made the same decision but whether the verdict is so contrary to the evidence that justice compels a new trial. *Id.* For a new trial to be awarded on this challenge, the evidence must be "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Edwards*, 399 Pa.Super. 545, 554, 582 A.2d 1078, 1083 (1990), *appeal denied,* 529 Pa. 640, 600 A.2d 1258 (1991). Where the credibility of a witness is at issue, the trial court's judgment will remain undisturbed on appeal. *Commonwealth v. Rochon*, 398 Pa.Super. 494, 504, 581 A.2d 239, 244 (1990). If the source of the evidence is, however, so unreliable or contradictory that it renders a verdict thereon pure conjecture, this Court will overturn the conviction. *Commonwealth v. Whack*, 482 Pa. 137, 140, 393 A.2d 417, 419 (1978); *Commonwealth v. Trudell*, 371 Pa.Super. 353, 538 A.2d 53 (1988), *appeal denied,* 519 Pa. 665, 548 A.2d 255 (1988).

Applying the above-mentioned standard to the instant case, appellant's contention that he brought knives and a meat cleaver into the playground and led the attack on the white youths present because he was fearful for his own life and the lives of the other Vietnamese males present was not believed by the jury. Because the jury found that appellant and the other co-conspirators with whom he acted in concert were not justified in employing deadly force against the decedent and his friends, appellant is equally culpable for all of the consequences of the unlawful and unwarranted attack. Thus, appellant's conviction of third degree murder in the death of David Reilly does not shock the conscience of this Court.

Appellant, in his final issue on appeal, challenges the jury array on the basis that the selection process was not done on a random county-wide basis. Appellant argues that the system of compiling the various jury arrays from only thirteen geographically scattered wards at a time, caused the systematic under-representation of Asians on the jury panels. Appel-

lant maintains that because jurors in Philadelphia County are not selected on a random county-wide basis, Asians are not present on jury panels in numbers equal to the percentage of the county-wide population. Thus, appellant asserts that because the jury did not represent a fair cross-section of the community, he is entitled to an arrest of judgment and a new trial.

After reviewing the record, the briefs of the appellant and the Commonwealth, the applicable law and the comprehensive opinion of the trial court, we are in agreement with the trial court that appellant has not presented any credible evidence in support of his argument that Asians are systematically excluded from jury service in Philadelphia County. We are satisfied that the opinion of the trial court judge, the Honorable David N. Savitt, comprehensively disposes of appellant's fifth issue. Therefore, we affirm as to this issue on the basis of that opinion.[7]

Based upon the foregoing, the judgment of sentence imposed upon appellant following his conviction of third degree murder, aggravated assault, criminal conspiracy, and possession of an instrument of a crime is affirmed.

Judgment of sentence affirmed.

---

7. *See* Trial Court Opinion at 8–10.