J-S08021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JEREMIAH BUSH | |
| Appellant | No. 1731 EDA 2014 |

Appeal from the Judgment of Sentence of January 30, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0008142-2012

BEFORE: DONOHUE, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.: **FILED FEBRUARY 17, 2015**

Jeremiah Bush appeals the January 30, 2014 judgment of sentence, which was entered following his jury convictions of first-degree murder, carrying a concealed firearm without a license, and possessing an instrument of crime.[1] The trial court sentenced Bush to life imprisonment without parole on the murder conviction, and imposed no further sentences on the remaining convictions. Before us, Bush challenges both the weight and the sufficiency of the evidence to sustain his murder conviction. We affirm.

The learned trial court summarized the factual history of this case as follows:

_____

[1] 18 Pa.C.S. §§ 2502(a), 6106, and 907, respectively.

At trial, the Commonwealth presented the testimony of Philadelphia Police Sergeant Steven Crosby, Philadelphia Police Detectives Michael Rocks and William Kelhower, Philadelphia Police Officers Robert Burrell, Ronald Weitman, Russell Seiberlich, and Scott Pollack, Assistant Medical Examiner Dr. Edwin Lieberman, as well as Lorna Wall, Clarence Milton, Kalil Bell, and Robert Matthews. [Bush] testified on his own behalf. Viewed in light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

[Bush], Clarence Milton, and Steven Brown were childhood friends who engaged in drug[-]selling activities for several years prior to 2006. As part of his drug operation, Steven Brown used to provide drugs to Kareem Brown. On March 26, 2006, Steven Brown was shot and killed. [Bush] and Milton had conversations regarding Steven Brown's death and street gossip indicated that Kareem Brown was the shooter.

On September 20, 2006, [Bush] attempted to locate Kareem Brown, in an attempt to exact revenge for the death of Steven Brown. While looking for Kareem Brown, [Bush] encountered Kareem Brown's brother-in-law, the decedent[,] Leary Wall. [Bush] demanded [that] Wall tell him where Kareem Brown could be found and, when Wall did not or could not tell, [Bush] shot him. [Bush] then left the area in a vehicle driven by an individual named Qua.

At approximately 9:45 p.m. that same evening, Philadelphia Police Detective Michael Rocks responded to a radio call on the 2100 block of Dover Street in Philadelphia. Upon arriving at the scene, Rocks observed Wall lying on the highway, having been shot four times. Wall was transported to Temple University Hospital, where he was later pronounced dead. Two bullets were recovered from Wall's body, while seven nine millimeter cartridge cases were recovered from the homicide scene. Both recovered bullets were fired from the same firearm.

Some time following Wall's shooting, an individual by the name of "Bum" contacted [Bush's] friend Milton in order to buy a firearm. Milton contacted [Bush], who indicated that he had a "dirty" gun to sell. [Bush] indicated that the firearm was "dirty" because he had used it to shoot Wall and further detailed the circumstances surrounding the shooting. [Bush] subsequently sold Bum a black nine millimeter firearm for approximately [$500.00].

On July 12, 2007, [Bush] was arrested and charged for a separate shooting that occurred on September 13, 2006, one week prior to the shooting of Wall. On that date, police responded to a reported shooting on the 1900 block of West Norris Street in Philadelphia. Upon arriving at the scene, police found Amin Payne and Timothy Fontaine, both suffering from gunshot wounds. Payne was shot a total of seven times and police recovered seven nine millimeter fired cartridge casings. Charges against [Bush] were ultimately *nolle prossed* due to the lack of cooperation of the witnesses.

In 2009, [Bush] was in custody in Delaware County Prison with Robert Matthews as a cellmate. At some point, Payne, the victim of the September 13, 2006 shooting, was escorted into the cell block. [Bush] informed Matthews that he had shot Payne seven times "over a beef" using a nine millimeter handgun. Upon noticing [Bush], Payne alerted the prison officials and was escorted from the block. At a later time, while still in custody, [Bush] told Matthews that he had killed someone with the same firearm that he had used to shoot Payne. [Bush] thereafter informed Matthews of the circumstances of his shooting Wall.

On July 30, 2010, Kalil Bell, a friend of [Bush], contacted the Philadelphia Police through a letter stating that he was willing to talk with police. Detective William Kelhower conducted an interview with Bell on February 7, 2011, concerning the death of Wall. In this interview, Bell stated that [Bush] had admitted to Bell that [Bush] had shot Wall while attempting to locate Kareem Brown.

On September 20, 2010, Mathews [*sic*] gave a statement to police concerning what [Bush] had told him while in custody. On November 8, 2011, Clarence Milton, [Bush's] friend, provided a statement to the police indicating that [Bush] confessed to killing Wall during their discussion about the sale of the "dirty" gun. Subsequent testing confirmed that the seven bullet casings recovered from the scene of the homicide matched the seven casings recovered a week prior to the homicide from the shooting of Payne. An arrest warrant was issued for [Bush] on February 6, 2012[,] and [Bush] was taken into custody two days later, on February 8, 2012.

Trial Court Opinion ("T.C.O."), 9/12/14, at 1-4 (footnotes and citations to notes of testimony omitted).

Following a jury trial, Bush was found guilty of the above-listed crimes and sentenced to life imprisonment without parole on January 30, 2014. On February 10, 2014, Bush filed a post-sentence motion, which the trial court denied on May 14, 2014.

On June 11, 2014, Bush filed a notice of appeal to the this Court, and the trial court immediately instructed Bush to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Bush timely filed a concise statement on July 2, 2014. On September 12, 2014, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) in response to Bush's concise statement.

Bush raises the following issues on appeal:

1) Is [Bush] entitled to an arrest of judgment on the charge of [m]urder in the [f]irst [d]egree and all related charges where there is insufficient evidence to sustain the verdict?

2) Is [Bush] entitled to a new trial on all charges where the verdict on [m]urder in the [f]irst [d]egree and all related charges is not supported by the greater weight of the evidence?

Brief for Bush at 3.

In his first issue, Bush generally challenges the sufficiency of the evidence developed by the Commonwealth to convict him of all charges. Specifically, he contends that the Commonwealth adduced insufficient evidence to prove he was the perpetrator of the crimes with which he was

charged. *Id.* at 7. However, Bush only addresses the first-degree murder conviction in his brief. *Id.* at 8-10. Accordingly, we review the sufficiency of the evidence only as to that conviction.

When examining a challenge to the sufficiency of evidence:

The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa. Super. 2005)).

In order for a jury to convict Bush of first-degree murder, the Commonwealth must establish that Bush committed an intentional killing. 18 Pa.C.S. § 2502(a). Intentional killing is defined as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). "The use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill."

*Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007). "The chest and abdomen house the human body's chief circulatory and digestive organs, as well as a network of vital arteries and veins which supply them and, thus, are vital areas of the body." *Commonwealth v. Briggs*, 12 A.3d 291, 307 (Pa. 2011).

Presently, Bush argues that the Commonwealth failed to prove beyond a reasonable doubt that he was the perpetrator of the murder. Brief for Bush at 7. Further, Bush argues that multiple witnesses at trial provided unreliable testimony, which led to his conviction. *Id.* at 9. To that end, Bush relies upon the general principle that was espoused in *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993), that where the "evidence presented at trial when carefully reviewed in its entirety, is so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law." *Id.* at 1172. Bush argues generally that the testimony elicited by multiple witnesses at trial was so unreliable that the evidence was insufficient to support a guilty verdict. Brief for Bush at 9-10. Specifically, Bush argues, "the two witnesses, Clarence Milton and Robert Matthews, came forward only in order to curry favor with law enforcement." *Id.* at 9. Although this type of claim typically implicates a challenge to the weight of the evidence, *see Commonwealth v. DeJesus*, 860 A.2d 102, 107-108, (Pa. 2004), because Bush raises his claim under *Karkaria*, a sufficiency case, we will review the claim as a sufficiency challenge.

In light of Bush's limited sufficiency challenge, we need only review the identity element of his convictions. As noted earlier, circumstantial evidence is sufficient to establish the defendant's identity as the perpetrator of a murder. *Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. 2009). Indeed, circumstantial evidence itself is sufficient to prove any element or all of the elements of criminal homicide. *Id.*

Milton and Matthews both testified that Bush confessed to them that he shot and killed Wall with a nine millimeter gun. Notes of Testimony ("N.T."), 1/28/2014, Vol. 2, at 81; N.T., 1/29/2014, Vol. 3, at 65-66. However, even absent Milton and Matthews' testimony, there was additional testimony and evidence to prove beyond a reasonable doubt that Bush murdered Wall. Detective William Kelhower testified that he interviewed Kalil Bell on February 7, 2011, during which Bell said that Bush also told him that he shot and killed Wall. N.T., 1/28/2014, Vol. 2, at 257-268. Although there were inconsistencies in the evidentiary record, the testimony was not "so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law." *Karkaria*, 625 A.2d at 1172. Rather, there was ample evidence to enable the jury to find beyond a reasonable doubt that Bush was the person who killed Wall. Consequently, Bush's first issue does not merit relief.

In his second issue, Bush also claims that the jury's verdict was against the weight of the evidence.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Dupre***, 866 A.2d 1089, 1101 (Pa. Super. 2005), (citing ***Commonwealth v. Sullivan***, 820 A.2d 795, 805–806 (Pa. Super. 2003), (quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 751–752 (Pa. 2000))). The Pennsylvania Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Widmer***, 744 A.2d at 753 (citation omitted). To grant a new trial on the basis that the verdict is against the weight of the evidence, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" ***Sullivan***, 820 A.2d at 806 (quoting ***Commonwealth v. La***, 640 A.2d 1336, 1351 (Pa. Super. 1994)).

[This Court shall not undertake to reassess credibility of witnesses, as] it is well settled that we cannot substitute our judgment for that of the trier of fact. ***Commonwealth v. Holley***, 945 A.2d 241, 246 (Pa. Super. 2008). Further, the finder of fact was free to believe the Commonwealth's witnesses and to disbelieve the witness for the Appellant. ***See Commonwealth v. Griscavage***, 517 A.2d 1256 (Pa. 1986) (the finder of fact is free to believe all, none, or part of the testimony presented at trial).

***Commonwealth v. Bozic***, 997 A.2d 1211, 1223-24 (Pa. Super. 2010) (citing ***Commonwealth v. Manley***, 985 A.2d 256, 262 (Pa. Super. 2009)) (citations modified).

To support his weight of the evidence claim, Bush essentially reiterates his sufficiency arguments, and contends that the jury should have accepted his account of the events in question and rejected the testimony of the

Commonwealth's witnesses.[2]   Again, Bush assails the credibility of both Milton and Matthews' testimony, particularly the testimony identifying him as the perpetrator of the murder.  At trial, Bush's attorney cross-examined both Milton and Matthews, giving the jury ample opportunities to assess their credibility and bias.   *See* N.T., 1/28/2014, Vol. 2, at 96-138; N.T., 1/29/2014, Vol. 3, at 77-113.  Having heard the testimony and observed the demeanor of witnesses, including during cross-examination, the jury was free to believe, or not to believe, the testimony of those two critical witnesses.   Having reviewed the record, we conclude that the record supports the jury's verdict, and we discern no basis upon which to conclude that the trial court abused its discretion by concluding that the jury's verdict did not shock the court's conscience.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2015

---

[2]   Pursuant to Pa.R.Crim.P. 607(A)(3), Bush properly raised his weight challenge in his post-sentence motion.