436 Pa. Superior Ct. 584 (1994)
648 A.2d 563
COMMONWEALTH of Pennsylvania
v.
John Jay SHEPPARD, Appellant.
Superior Court of Pennsylvania.
Submitted February 14, 1994.
Filed September 30, 1994.
*587 Lester G. Nauhaus, Public Defender, Pittsburgh, for appellant.
Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com., appellee.
Before OLSZEWSKI, TAMILIA and CERCONE, JJ.
TAMILIA, Judge:
Appellant, John Jay Sheppard, was convicted of first degree murder[1] and appeals from the mandatory judgment of sentence of life imprisonment without parole entered December 9, 1991.
The trial judge, the Honorable W. Terrence O'Brien, accurately set forth the facts of this case as follows.
On March 9, 1991, between 3:00 and 4:00 P.M., Angel Stier went to the Sheppard home on Fitzsimmons Street in Penn *588 Hills, Allegheny County. When she arrived the defendant, his sister, Amy, his brother, Robert, and his parents were there. The defendant, Robert and Stier went to the basement where they sat, talked and watched television. James Prenter subsequently joined them. Sometime between 5:00 and 7:00 P.M. the victim, Karl Kerr, arrived. He stayed about thirty minutes to an hour and then left. About a half hour later, Kerr returned with a "party ball", which is a round ball full of beer with a pump, similar to a keg. Then Kerr left, and the defendant, Robert, Prenter and Stier watched television, talked and drank.
Kerr returned, around 9:00 or 9:30 P.M., and brought a bottle of Jack Daniels, which everyone drank. After that, several arguments ensued. One incident involved Kerr slap boxing Robert, I.E., hitting him in the face. The defendant became angry and said, "You can't hit my brother." Kerr apologized to Robert and everyone resumed drinking and talking.
Kerr became more argumentative. Both he and defendant were drunk. Then defendant and Kerr argued about a mug that Kerr broke. The defendant wanted Kerr to pay for the mug, but he refused. Defendant accused Kerr of always breaking his "things".
At one point during the evening, Kerr was sitting at the bar, resting his head on his hands. Defendant went into the utility room and returned with an ax. He swung the ax at least twice, missing Kerr and striking the bar. Kerr got up and went to sit in a chair. The defendant followed him and continued swinging. The first blow hit Kerr's side. After defendant swung a couple more times, Kerr got up and tried to protect himself. Defendant continued his attack even after the unarmed Kerr was down, hitting him about the head, body and legs.
Detective Pat Meredith arrived at the Sheppard house at 12:50 A.M. The victim was laying on his left side, on the floor, partially on the ax. There was an enormous amount of blood on the floor and splattered on the ceiling, duct work and walls. He had numerous wounds to the head, chest and *589 stomach area, and defensive wounds about the arm area. An autopsy revealed the cause of death to be incised wounds to the head. The long handled ax weighed 5¾ pounds. It was 34 inches in length with a 4¾ inch blade. There was blood and blood-encrusted hairs on the ax head which were consistent with the blood and hair of the victim.
(Slip Op., O'Brien, J., 6/30/93, pp. 2-4; citations to trial transcript omitted.)
As in any case where there is a factual dispute on the record as to the activities in which appellant and the victim engaged, the issues of credibility are to be determined by the jury. "[I]t is the prerogative of the fact-finder to believe all, part or none of the evidence presented." Commonwealth v. Hlatky, 426 Pa.Super. 66, 75-77, 626 A.2d 575, 580 (1993). Appellant's attack on the verdict avers in principle that the evidence was insufficient to convict him of first degree murder because his state of mind was such that he acted in the "heat of passion" or under an unreasonable belief the killing was in self-defense.
In reviewing the sufficiency of the evidence to support a conviction, the evidence must be viewed in the light most favorable to the Commonwealth, and the Commonwealth is entitled to all favorable inferences which may be drawn from the evidence. If a jury could have reasonably determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict.
Commonwealth v. La, 433 Pa.Super. 432, 640 A.2d 1336, 1350 (1994) (citations omitted).[2]
Appellant contends that trial counsel was ineffective in presenting his defense which resulted in conviction of first degree murder rather than a lesser degree of guilt or possible discharge. We note that the instant timely appeal was perfected after trial counsel from the public defender's office withdrew and new counsel, also from the public defender's *590 office, was assigned. In these circumstances, Commonwealth v. Barnes, 406 Pa.Super. 58, 593 A.2d 868 (1991), instructs:
Because present counsel is raising claims challenging the effectiveness of another attorney from the same office, we should remand the case for appointment of new counsel unless (1) it is clear from the record that counsel was ineffective, or (2) it is clear from the record that the ineffectiveness claim is meritless.

Id. at 60-61, 593 A.2d at 869 (emphasis added). Appellate counsel presents the following statement of questions for our consideration.
I. Was trial counsel ineffective for failing to argue that available psychiatric testimony relating to Mr. Sheppard's state of mind was relevant in determining whether he acted in the "heat of passion" or under an "unreasonable belief the killing was justifiable?"
II. Was trial counsel ineffective for failing to argue in post-trial motions that the trial court erred in not granting a mistrial based on the prosecutor's inflammatory remarks in his closing arguments?
Appellant's brief at p. 3.
The standard of review in analyzing ineffectiveness is subject to a three-tiered analysis. First, the appellant must demonstrate that the underlying claim is of arguable merit. Second, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his/her client's interests and finally, we require a showing that establishes the manner in which counsel's choice of action prejudiced the client. Commonwealth v. Williams, 537 Pa. 1, 640 A.2d 1251 (1994); Commonwealth v. Toro, 432 Pa.Super. 383, 638 A.2d 991 (1994). The law presumes counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the appellant, Commonwealth v. Boyles, 407 Pa.Super. 343, 595 A.2d 1180 (1991), and counsel will not be deemed ineffective for failing to assert a defense that would *591 not have been beneficial. Williams, supra. Moreover, a claimant must allege sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective since the appellate courts will not consider such claims in a vacuum. Commonwealth v. Durst, 522 Pa. 2, 559 A.2d 504 (1989).
Having established the criteria for review, we move to the issues posited by appellant. Appellant first contends trial counsel was ineffective for failing to pursue a "heat of passion" voluntary manslaughter defense by use of psychiatric (psychological)[3] testimony, pursuant to 18 Pa.C.S. § 2503, which provides:
(a) General rule.  A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
(1) the individual killed.
This argument is without merit because at trial appellant did not testify that he acted in the "heat of passion" after Kerr had seriously provoked him. Two arguments ensued between appellant and Kerr, the first after Kerr was "slap boxing" with appellant's brother and the second after Kerr broke a naval mug belonging to appellant. In neither situation was there sufficient aggravating circumstances to constitute serious provocation. In fact, the appellant and Kerr were categorized as best friends, and after one of the disputes, the victim apologized for striking appellant's brother. The testimony elicited by the Commonwealth from Angel Stier concerning the two arguments and appellant's testimony alleging self-defense preclude the possibility of a "heat of passion" finding. *592 Under these circumstances, psychiatric (psychological) testimony was not relevant or admissible to support that position.
Appellant also claims trial counsel was ineffective for failing to argue psychiatric (psychological) testimony was relevant to help establish appellant's state of mind when he acted "under an unreasonable belief the killing was justifiable." This argument is more complex, but, nonetheless, no basis exists for finding ineffectiveness.
Commonwealth v. Light, 458 Pa. 328, 326 A.2d 288 (1974), is instructive as to when prejudicial error is committed in failing to introduce psychological/psychiatric evidence to aid in establishing a defense based upon "heat of passion" or "imperfect self-defense." It remains to be determined if error was committed when trial counsel failed to object to the denial of admission of testimony by the psychologist, Dr. Herbert Levit, as to impaired cognitive mental functioning based on paranoid ideation, exacerbated by heavy use of alcohol. As indicated above, pursuant to the standard espoused in Williams, and its predecessors and progeny, the ineffectiveness of counsel is measured by whether the course asserted to have been foregone by counsel would have reasonable merit, whether the course chosen had no reasonable basis designed to effectuate the client's interest and, finally, how counsel's commission or omission prejudiced him. Our analysis of the facts, admissibility of the psychological testimony and the court's charge to the jury leads us to conclude there was no merit to the argument of "imperfect self-defense" based on impaired state of mind, and the appellant suffered no prejudice by the failure of trial counsel to omit presentation of that defense. The facts of record belie the likelihood that any objective basis existed for a subjective, although unreasonable, belief that appellant was in danger and acted in self-defense.
We consider the testimony of two witnesses, Angel Stier and appellant, in determining whether such a subjective belief could be justified on the facts as required by Light, supra, and 18 Pa.C.S. § 2503(b), Unreasonable belief killing *593 justifiable.[4] The two versions are diverse, Stier clearly establishing a deliberate and unwarranted attack by appellant against Kerr after Kerr had withdrawn from controversy, with appellant seeking the ax in another room and pursuing Kerr with a series of vicious onslaughts with the ax, resulting in the death of Kerr. Appellant's version is that Kerr was continuing to hurt appellant's sixteen-year old younger brother when appellant intervened, whereupon Kerr turned on him verbally and with finger prods, creating in appellant a fear of death which caused him to wield an ax to defend himself, the ax somehow appearing in his grasp as he was retreating. The appellant ignores the testimony of two other witnesses, called by the Commonwealth, who corroborated the account of Angel Stier. Thirteen-year old James Prenter (who also had been slapped around by Kerr) testified that Kerr was seated in a chair when struck by appellant, and Detective Meredith testified appellant told him he pushed Kerr away from his brother, then grabbed an ax and struck Kerr four or five blows which knocked him down, then a few more blows "for insurance" so he wouldn't get up. These were not the actions of a person in fear for his life who felt the need to defend himself by deadly force. The forensic pathologist testified a total of seventeen blows were struck. From all of the evidence supplied to the court and to the jury, coupled with the charge on diminished capacity, heat of passion and self-defense, the jury properly could convict appellant of first degree murder.
As detailed above, this finding must be given deference under our standard of review. Of the various defenses proposed by counsel, the weakest to be argued is imperfect self-defense. If the evidence could possibly be construed to mitigate *594 the murder charge, it would be operative in the diminished capacity defense. Despite the proposed testimony of the psychologist, which was directed toward a diminished capacity or heat of passion defense, nothing in appellant's testimony or the factual situation as played out in the courtroom can give rise to a reasonable application of a mental state of mind that could justify an imperfect self-defense claim.
The testimony indicated Kerr and appellant were best friends and there is no evidence of prior episodes which would lead to a belief Kerr was a threat to appellant. The evidence established that the homicide occurred as a result of a steadily escalating process of drinking and horseplay until appellant used excessive and unwarranted force with an ax to retaliate for Kerr's aggressive behavior. The behavior by Kerr was not life-threatening nor so provocative as to require or provoke retaliation. While apparently intoxicated, appellant, as an alcoholic, according to the toxicologist, dissipates alcohol at a faster rate than non-alcoholics, and the alcohol content of his blood (estimated at .335 per cent) might not have been a true indicator of the degree of intoxication. At any rate, the testimony of the toxicologist was speculative at best and was given whatever weight it was due by the jury.
The psychologist, relying on a five-year old diagnosis of borderline personality in appellant, as well as substance abuse and alcoholism, came to the same diagnosis after his own examination. He concluded these factors would result in impairment of appellant's cognitive processes (judgment, inhibition, formulation of judgment), which in turn would be further diminished by alcohol. Dr. Levit's testimony would not have professed that appellant's underlying chronic condition resulted in such an exacerbated degree of stress in this case as to overcome appellant's will or judgment. Appellant's own testimony and that of the witnesses establishes he was operating without impairment of will or judgment. There was insufficient provocation from any of the actions of Kerr to justify heat of passion, and the voluntary intoxication and the degree of knowledge and control exhibited by the appellant prevents the application of a diminished capacity defense. *595 Commonwealth v. Potts, 486 Pa. 509, 406 A.2d 1007 (1979); Light, supra; Commonwealth v. McCusker, 448 Pa. 382, 292 A.2d 286 (1972).
To go beyond a diminished capacity defense to utilize the same testimony, which was unavailing for those purposes, to establish a greater degree of cognitive disability, thereby taking the case out of the various degrees of murder and establishing voluntary manslaughter, is untenable. The evidence would not justify the former and is less availing to justify the latter.
Commonwealth v. Zettlemoyer, 500 Pa. 16, 454 A.2d 937 (1982), prevents diminished capacity defense by testimony that a person had a "schizoid personality and was paranoid." Testimony from the arresting police officers was to the effect appellant's speech was not slurred, he did not stagger, and other than the smell of liquor on his breath, he did not appear to be intoxicated. Appellant had enough control to intervene when Kerr was annoying the three younger persons (Angel, 16, Robert Sheppard, 16, and James Prenter, 13). It was after Kerr broke a mug and smashed and discarded a Jack Daniel's bottle that appellant attacked him.
Viewing this testimony as it would have been perceived by the trial court and as required by Light, supra, the denial of the psychologist's testimony was not a fatal error, although the testimony was admissible to show if appellant had a bona fide belief he was in danger. As in Light, the facts of this case are such that there was no basis for a reasonable belief appellant was in danger. Self-defense must be established by showing the actor had an honest, bona fide belief he was in imminent danger; second, the belief must be reasonable in light of the facts as they appeared to him. McCusker, supra, provides that psychiatric evidence is admissible as to a defendant's state of mind as to the bona fide belief. While the psychological evidence was admissible on the subjective state of mind under the circumstances, the prerequisite of objective elements to trigger the belief he was in danger was not present. The mere diagnosis of paranoid personality does not *596 provide appellant with a standing immunity from any charge of homicide higher than voluntary manslaughter. Paranoia and paranoid personalities are extant throughout the population and persons with that mental condition function for the most part without committing mayhem or homicide.
It is not the appellant who determines what is a reasonable belief. There must be some standard by which this belief is measured. Commonwealth v. Fisher, 342 Pa.Super. 533, 493 A.2d 719 (1983). In a concurring opinion in Potts, supra, Justice Nix, concurring in the result, would have found that following McCusker, supra, an objective standard is required to be applied in determining whether there was sufficient provocation.[5] When heat of passion and diminished capacity are ruled out for the same reason, the paranoid ideation cannot be applied. Zettlemoyer, supra. Recently, the legislature has determined to what degree psychosis or mental aberration relieves the individual of culpability and the requirements far exceed the alleged condition of appellant here.
Where the appellant goes astray is in the creation of a third category of mental impairment to diminish or relieve culpability by creating a subjective state of mind to permit an imperfect self-defense. Title 18 Pa.C.S. § 2503(b) does not contemplate diagnosed mental disorders as a shield to a defendant under these circumstances but rather speaks to a misperception of the factual circumstances surrounding the event. See Light, supra. The classic case is the situation where a person comes to the door in the middle of the night to ask to use the telephone because of a breakdown, and the occupant, believing a burglar or robber is attempting to gain entrance, shoots in the belief he is acting in self-defense. To extend this concept to the degree proposed by appellant to include a paranoid mental state would open the flood gates to imperfect self-defense claims based entirely on a subjective state of mind when the objective component is not present. While appellant cites Commonwealth v. Kacsmar, 421 Pa.Super. *597 64, 617 A.2d 725 (1992), for that proposition, it is not relevant as Kacsmar involved a long history of abuse by the victim and psychiatric testimony was relevant to establish the state of mind thereby created in defendant of chronic fear for his life, and the reasonableness of the belief he acted in self-defense when he shot the victim. No case cited by appellant or located during our research establishes that a diagnosis of paranoid personality, without more, is applicable under section 2503(b), so as to permit a claim of imperfect self-defense. The paranoia is either not a factor which would reduce culpability or, if it is a significant factor, it must be pleaded in a "guilty but mentally ill" or insanity defense.
The legislature has perceived a problem relating to psychiatric disorders as it relates to crime, particularly homicide. Aside from the diminished capacity defense,[6] which has to do with voluntary intoxication, at best reducing the degree of homicide (and only homicide) from first degree to third degree, the only other reduction is in the nature of heat of passion pursuant to 18 Pa.C.S. § 2503(a). An imperfect self-defense, pursuant to section 2503(b), does not fit within these categories and is more in the nature of perception based upon faulty analysis of the circumstances, or state of mind arising from a pattern or history of interaction, which would lead to a reaction based on fear of one's safety arising out of previous abuse. This is what Kacsmar speaks to, as do those jurisdictions which have adopted the "battered wife syndrome" as a justification for homicide.
In the context of this case, if diminished capacity is not relevant and heat of passion and provocation do not apply, then any claim of acting allegedly in self-defense must be viewed in light of a psychiatric mental condition under the Diagnostic and Statistical Manual of Mental Disorders *598 (American Psychiatric Association) ["D.S.M. III"] which would carry the mental state into the category "Guilty but mentally ill," 18 Pa.C.S. § 314.[7]
The legislature did not abolish the M'Naghten Rule, see 18 Pa.C.S. § 314(d), and, therefore, if appellant had sufficient capacity to understand the difference between right and wrong, and his mental capacity was not diminished, or he did not operate out of the heat of passion, then counsel cannot be held ineffective for not attempting an imperfect self-defense justification. If appellant was so paranoid that he did not know the nature or quality of the act he was committing, as suggested by appellant, 18 Pa.C.S. § 314(c)(1) Definition, *599 then "Guilty but mentally ill" was the proper defense. Obviously, this was not a desirable tactical approach by defense counsel because such a plea does not reduce jail time. See 42 Pa.C.S. § 9727, Disposition of persons found guilty but mentally ill. His only reasonable defense was diminished capacity or homicide under heat of passion.[8]
We do not believe the failure to introduce the psychological testimony was of any consequence to appellant's conviction as the objective evidence did not justify diminished capacity, heat of passion or imperfect self-defense. The appellant's alleged subjective cognitive process under case law is not a factor for consideration unless and until the objective determination has been made, as in McCusker and Kacsmar, that a basis exists for such a perception. Nothing in the record in this case establishes such a basis. The entire statutory scheme as it applies to exculpatory defenses and degree of guilt evidences a carefully structured schedule of liability measuring culpability by intent, malice, capacity as inhibited by mind altering substances, personality impairment, mental illness and insanity. The category suggested by the appellant's arguments does not fit into the legislative scheme and cannot be the basis for reversal and remand.
The final issue argued by appellant is that counsel was ineffective for failing to preserve in post-trial motions a claim of trial court error in refusing counsel's request for a mistrial based on inflammatory comments of the prosecutor. *600 The alleged prejudicial remarks were made during the prosecutor's closing remarks to the jury:
There's not a lot that can be done for Karl Kerr and his family now. That is not your role, in any event it is much, much, much too late, even if you were allowed under oath to do so, you can't remedy it.
* * * * * *
You know, the Commonwealth and the Kerr family have no use for tears, no use for prayers, if your verdict is just, that is all we can expect from you.
(N.T., 12/9/92, 316, 337.)
The standard which we must apply to alleged prejudicial remarks by prosecutors was enunciated by the Pennsylvania Supreme Court in Commonwealth v. Faulkner, 528 Pa. 57, 595 A.2d 28 (1991).
`Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial.' Rather, the focus is on what, if any, effects the comments had on a jury. A new trial is required when the effect of the District Attorney's comments `would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant so that they could not weigh the evidence objectively and render a true verdict.'
Id. at 77, 595 A.2d at 39 (citations omitted). The remarks were neither prejudicial nor inflammatory and simply implied that the jury could reach a just result, based upon the evidence, without being swayed by compassion for the victim's family. The court properly charged that the arguments of counsel are not evidence and the jury should not consider them such in its deliberation (N.T. at 366). Finding no prejudice in the prosecutor's remarks which could change the result of the verdict, trial counsel cannot be deemed to be ineffective for failing to preserve this issue in post-verdict motions. See Commonwealth v. Pate, 421 Pa.Super. 122, 617 A.2d 754 (1992), appeal denied, 535 Pa. 656, 634 A.2d 219 (1993).
*601 For the foregoing reasons we affirm the judgment of sentence.
Judgment of sentence affirmed.
CERCONE, J., concurs and dissents.
CERCONE, Judge, concurring and dissenting.
I would hold that appellant's claim of trial counsel ineffectiveness for failure to proffer psychiatric testimony as to imperfect self-defense has arguable merit. I join the majority's determination in all other respects. Accordingly, I concur and dissent. The trial judge, the Honorable W. Terrence O'Brien, aptly set forth the background of this case as follows:
On March 9, 1991, between 3:00 and 4:00 P.M., Angel Stier went to the Sheppard home on Fitzsimmons Street in Penn Hills, Allegheny County. (T-60, 61, 108) When she arrived the [appellant], his sister, Amy, his brother, Robert, and his parents were there. (T-109) The [appellant], Robert and Stier went to the basement where they sat, talked and watched television. (T-109, 110) James Prenter subsequently joined them. (T-113) Sometime between 5:00 and 7:00 P.M. the victim, Karl Kerr, arrived. He stayed about thirty minutes to an hour and then left. (T-110) About a half hour later, Kerr returned with a "party ball", which is a round ball full of beer with a pump, similar to a keg. (T-111, 112) Then Kerr left, and the [appellant], Robert, Prenter and Stier watched television, talked and drank. (T-113)
Kerr returned, around 9:00 or 9:30 P.M., and brought a bottle of Jack Daniels, which everyone drank. (T-115, 116) After that, several arguments ensued. (T-118) One incident involved Kerr slap boxing Robert, I.E. [sic], hitting him in the face. (T-118) As a result, Robert's lip was cut. The [appellant] became angry and said, "You can't hit my brother." Kerr apologized to Robert and everyone resumed drinking and talking. (T-119)
Kerr became more argumentative. (T-121) Both he and [appellant] were drunk. (T-158) Then [appellant] and *602 Kerr argued about a mug that Kerr broke. (T-119, 132) The [appellant] wanted Kerr to pay for the mug, but he refused. [Appellant] accused Kerr of always breaking his "things".
Lower court opinion, 6/30/93 at 2-4.
At this point the evidence diverges. The Commonwealth's principal witness, Angel Stier, testified that appellant went into a utility room and returned wielding an ax. At that time, Kerr was sitting by the bar with his head resting on his hands. Stier recounted that appellant began swinging the ax, but missed Kerr. Kerr then went to sit in another chair. Appellant continued to swing at Kerr and struck him with the ax several times. Kerr died from the wounds which appellant inflicted. Commonwealth witness James Prenter corroborated Stier's testimony that appellant left the room to obtain the ax.
Appellant's version of the events contrasted markedly. He claimed that he drank a substantial amount of alcoholic beverages that evening. He testified that after Kerr smashed a bottle of whiskey against a wall and broke appellant's Naval mug, he [appellant] told Kerr to settle down or leave. Afterwards, appellant claimed that he saw Kerr hunched over his brother, choking him, and heard his brother crying. At that point, appellant pushed Kerr away from his brother and confronted him. Kerr turned on appellant and cornered him in such a manner that he feared for his life. Appellant was able to reach an ax located behind him. He grabbed the ax and hit Kerr in the chin with the butt of the handle. The blow did not stop Kerr who then mumbled that he was going to kill appellant. Appellant indicated that although he and Kerr were best of friends, he had never seen Kerr act in such a manner. He further indicated that after seeing what he believed to be Kerr choking his brother, he feared for his own life. Therefore, he began swinging the ax, fatally wounding Kerr.
Our standard of review for allegations of ineffective assistance of counsel is well-established and quite narrow. Ineffectiveness *603 claims are subject to a three-part analysis. First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his or her client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client. Commonwealth v. Tavares, 382 Pa.Super. 317, 321, 555 A.2d 199, 201 (1989), appeal denied 524 Pa. 619, 571 A.2d 382 (1989). Prejudice in the context of a claim of ineffective assistance of counsel is determined by an evaluation of whether "but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different." Commonwealth v. Petras, 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987). The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant. Commonwealth v. Smith, 380 Pa.Super. 619, 624, 552 A.2d 1053, 1056 (1989), appeal denied, 525 Pa. 581, 575 A.2d 112 (1990). Counsel will not be deemed ineffective for failing to assert a baseless claim. Commonwealth v. Cook, 383 Pa.Super. 615, 623, 557 A.2d 421, 425 (1989). Moreover, in making assertions of ineffectiveness, a claimant must allege sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective since the appellate courts will not consider such claims in a vacuum. Commonwealth v. Durst, 522 Pa. 2, 4, 559 A.2d 504, 505 (1989).
Appellant contends that trial counsel was ineffective for failing to argue that the testimony of his expert witness, Dr. Herbert Levit, concerning appellant's paranoid personality disorder, was relevant to appellant's defense of imperfect self-defense.[1] William E. Brennan, counsel for appellant before and during trial, was a member of the Allegheny County Public Defender's office. Mr. Brennan filed notice that appellant intended to offer a diminished capacity defense based on appellant's paranoid personality disorder. Before trial, the Commonwealth filed a petition seeking to limit appellant's psychiatric testimony. The Commonwealth argued that evidence *604 of appellant's personality disorder was not relevant to appellant's diminished capacity defense. The trial court agreed with the Commonwealth and excluded Dr. Levit's testimony. See Commonwealth v. Zettlemoyer, 500 Pa. 16, 454 A.2d 937 (1982) (personality disorders are not relevant to a diminished capacity defense). On appeal, without contesting the trial court's ruling, appellant contends that trial counsel was ineffective for failing to argue the relevance of Dr. Levit's testimony as to "heat of passion" and "imperfect self-defense" voluntary manslaughter. I would find that such evidence would have been relevant to appellant's defense of imperfect self-defense and failure to offer it for that purpose might have been ineffective assistance of counsel.
The Pennsylvania Crimes Code defines voluntary man-slaughter in pertinent part as follows:
(a) General rule.  A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
(1) the individual killed; . . .
* * * * * *
(b) Unreasonable belief killing justifiable.  A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.
18 Pa.C.S.A. § 2503.
Appellant testified at trial that he acted in self-defense. Therefore all of the essential elements of evidence surrounding a self-defense claim become relevant and admissible. In so concluding, it is necessary to analyze the nature of self-defense. On that point, our Supreme Court has written:
It has long been the law in Pennsylvania that in order to establish the defense of self-defense, three essential elements must be proved by the defendant by a preponderance *605 of the evidence: `(1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing. . . . (2) The slayer must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom. . . . (3) The slayer must not have violated any duty to retreat or avoid the danger. . . .'
Commonwealth v. Light, 458 Pa. 328, 333, 326 A.2d 288, 291 (1974) (emphasis in original) (citations omitted); Commonwealth v. Samuel, 527 Pa. 298, 590 A.2d 1245 (1991); Commonwealth v. Galloway, 336 Pa.Super. 225, 485 A.2d 776 (1984). The Commonwealth then has the burden of disproving self-defense beyond a reasonable doubt. The Commonwealth may meet this burden with evidence tending to disprove any of the three elements set forth in Light, supra. Commonwealth v. Dinkins, 272 Pa.Super. 387, 391, 416 A.2d 94, 96 (1979). The jury alone determines whether the defendant's belief is reasonable. Commonwealth v. Fisher, 342 Pa.Super. 533, 541, 493 A.2d 719, 723 (1985). If the jury concludes that the killing was justified, then the defendant is properly acquitted. If the jury determines that the killing was not justified, but that the defendant subjectively believed the killing was necessary and committed the killing pursuant to that belief, then the defendant may be convicted of voluntary manslaughter. Galloway, 336 Pa.Super. at 239, 485 A.2d at 783.
Even a cursory review of appellant's testimony demonstrates that the evidence was sufficient to place the issue of self-defense before the jury. Appellant testified that when Kerr turned on him, he feared for his life. This claim was bolstered by appellant's testimony that Kerr threatened to kill him. Appellant stated that he feared Kerr because Kerr's actions on that evening, including the smashing of the bottle and mug, were completely out of character. Appellant testified that he had never seen Kerr act so violently. Appellant's evidence was sufficient to allow the jury to consider the issue of self-defense. Therefore, it must be determined whether the *606 testimony of Dr. Levit would have been admissible and helpful to appellant's self-defense claim.[2]
The Pennsylvania Supreme Court has previously discussed the admissibility of psychiatric evidence at trial where the defendant claims that he acted in self-defense. In Commonwealth v. Light, 458 Pa. 328, 326 A.2d 288 (1974), the defendant was charged with homicide. On the night in question, Light allowed various acquaintances to enter his home to wait for his brother, with whom he lived. While the defendant left the house to purchase beer, two of the guests went to the second floor of his house. When the defendant returned, he noticed lights in an upstairs bedroom and thought that prowlers might have entered. He grabbed a gun from his car and proceeded to enter the house. When the two guests came downstairs, the defendant shot and killed them. Id. at 331, 326 A.2d at 290. Based on these facts, a jury convicted appellant of voluntary manslaughter.
On appeal, the defendant claimed that the trial court erred in excluding the testimony of a psychiatrist as to whether the defendant believed he was acting in self-defense. The Supreme Court agreed with the defendant, holding that when self-defense is alleged, psychiatric testimony may be admitted to show the defendant's state of mind at the time of the *607 incident.[3]Id. at 335, 326 A.2d at 292 (emphasis added). Specifically, Justice Pomeroy, writing for the Court, held:
It will be noted that the requirement that the defendant be operating under the reasonable belief that he is in imminent danger of death, great bodily harm or some felony, involves two elements. First, the defendant in fact must have acted out of an honest, bona fide belief that he was in imminent danger. Second, the belief must be reasonable in light of the facts as they appeared to him. The first element is entirely subjective; the second, clearly objective. . . . [W]e believe that psychiatric testimony should be admissible as to the first element, i.e., the subjective element of the defendant's state of mind at the time of the occurrence. As stated below, it is not relevant as to the objective factor of reasonableness of the defendant's belief.
Light, 458 Pa. at 334, 326 A.2d at 292. Accord Commonwealth v. Black, 474 Pa. 47, 376 A.2d 627 (1977). Cf. Commonwealth v. McCusker, 448 Pa. 382, 292 A.2d 286 (1972) (psychiatric evidence permitted to show that the defendant acted in the heat of passion at the time of the killing). Thus, our Supreme Court has expressly approved of a defendant's use of expert testimony as it is relevant to his subjective belief that he is in imminent danger. It must also be noted that neither the Supreme Court's opinion in Light nor the cases citing that decision have limited the types of expert testimony which is admissible on this point, or the types of neuroses which may cause a defendant to honestly believe he is in imminent danger. Compare Commonwealth v. Zettlemoyer, supra (expert testimony on paranoid personality disorder is irrelevant to a diminished capacity defense to murder).
In the present case, the trial court reasoned that appellant's claim of ineffectiveness was meritless because Dr. Levit's testimony did not address appellant's defense of self-defense. I cannot agree with this conclusion. Dr. Levit examined *608 appellant and administered a series of tests to him. The results of those tests, in conjunction with background information Dr. Levit acquired concerning appellant, formed the basis of Dr. Levit's opinion that appellant suffered from a paranoid personality disorder. N.T. 12/5/91 at 6-8. Dr. Levit's conclusions are found in the following colloquy which occurred before trial began:
Q: [By defense counsel] Now, Doctor, the mental disorder that he [defendant] indeed suffers from, would that indeed affect the cognitive functions of deliberations in premeditation?
A: It certainly would.
Q: Would you please tell the Court how.
* * * * * *
A: I think that certainly there would be a distortion in his cognitive processes. His judgment would be impaired. He does have a history of rage reactions, of impulsively acting violently under the influence of drugs, which includes alcohol.
His inhibitions would be impaired, his judgment would certainly be impaired, and his ability to formulate reasonable judgments in my opinion would be quite impaired.
Q: Okay. Would they be impaired separate and distinct from the abuse of alcohol, simply suffering from a paranoid personality disorder?
A: I think so, yes, because people who are paranoid mis-perceive what's going on in their environment.

* * * * * *
Q: Now, Doctor, separate from the issue of deliberation and premeditation, would his paranoid personality plus the abuse of alcohol have an effect upon his subjective state of mind at the time of the killing as well?
A: Yes.
Q: To what extent?

*609 A: His state of mind would have been altered from what we consider normal, it would have been impaired, he would be prone to misperceive the things going on around him.

N.T. 12/5/91 at 9-10, 12 (emphasis added). Thus, expert psychiatric testimony revealed that appellant suffered from a paranoid personality disorder. Dr. Levit stated that this disorder distorted appellant's cognitive functions and impaired his ability to form reasonable judgments. N.T. 12/5/91 at 9-10. Contrary to the holding of the trial court, this evidence may have been relevant to show that appellant misconstrued the events in question and that he held an honest and bona fide belief that he was acting in self defense. Commonwealth v. Light, 458 Pa. at 334, 326 A.2d at 292. Dr. Levit's testimony concerning appellant's disorder could have given legitimacy to appellant's defense, which the jury might have otherwise construed as appellant's uncorroborated and desperate attempt to absolve himself of liability.[4]
*610 The Commonwealth argues that appellant's desire to introduce psychiatric testimony is nothing more than a veiled attempt to reduce the charge of murder to voluntary manslaughter based on his intoxicated condition at the time of the killing.[5] This argument is sheer speculation and without a scintilla of fact to support it. Dr. Levit testified that appellant's paranoid condition would affect his ability to reason, separate and apart from his abuse of alcohol. N.T. 12/5/91 at 10. Because of the psychiatric testimony, the jury could have found that appellant's reasoning was hampered regardless of his intoxication, and might have served to reduce the killing to voluntary manslaughter. Cf. Commonwealth v. Potts, 486 Pa. 509, 406 A.2d 1007 (1979) (plurality) (evidence of intoxication is not incompatible with evidence concerning heat of passion voluntary manslaughter).
Moreover, this evidence is almost identical to that found in Commonwealth v. Potts, supra. In that case, the Supreme Court found trial counsel ineffective for failing to present psychiatric testimony that the defendant suffered from a condition which caused him to perceive reality inaccurately, and which was exacerbated when the defendant was under the influence of alcohol. Id. at 512, 406 A.2d at 1008. The Supreme Court opined that when the defendant's state of mind is the only disputed issue at trial, failure to present determinative psychiatric testimony constitutes ineffective assistance of counsel. Id. at 513, 406 A.2d at 1009.
In the present case appellant's state of mind was not the only disputed issue which the jury was required to resolve. *611 Nonetheless, it was a critical issue. The certified transcripts reveal that trial counsel attempted to prove that appellant believed he was acting in self-defense. Moreover, appellant was the only person to testify that he was acting in such a manner. Without a full disclosure of evidence relating to self-defense, the accused was effectively denied his day in court. Therefore, psychiatric testimony, such as was explained by Dr. Levit, would have been probative of appellant's state of mind. See Commonwealth v. Fierst, 423 Pa.Super. 232, 620 A.2d 1196 (1993) (where critical issue was the voluntariness of appellant's actions, failure to offer expert testimony concerning appellant's seizure disorder was arguably ineffective assistance of counsel). Accordingly, I would hold that appellant's claim of ineffectiveness has arguable merit.
NOTES
[1] 18 Pa.C.S. § 2502(a).
[2] The standard of review is of significant importance in this case as appellant ignores the Commonwealth's evidence and places all of his emphasis on his recital of the facts, drawing only those inferences therefrom which are favorable to him.
[3] While appellant refers to the testimony as psychiatric testimony, the proposed testimony was to be presented by Dr. Herbert Levit, a psychologist, and therefore, as expert testimony, it is properly described as psychological testimony. Since the testimony was never admitted, we leave to another time whether a psychologist may qualify as an expert in presenting "psychiatric testimony" when the qualifications do not meet the standard required of psychiatric certification.
[4] Pa.C.S. § 2503. Voluntary manslaughter
. . . . .
(b) Unreasonable belief killing justifiable.  A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.
(c) Grading.  Voluntary manslaughter is a felony of the second degree.
[5] Only Justices Manderino and Roberts held the view that failure to introduce psychiatric evidence as to state of mind at the time of shooting was ineffectiveness of counsel.
[6] 18 Pa.C.S. § 308. Intoxication or drugged condition

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.
[7] 18 Pa.C.S. § 314. Guilty but mentally ill

(a) General rule.  A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.
(b) Plea of guilty but mentally ill.  A person who waives his right to trial may plead guilty but mentally ill. No plea of guilty but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the sole issue of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered. If the trial judge refuses to accept a plea of guilty but mentally ill, the defendant shall be permitted to withdraw his plea. A defendant whose plea is not accepted by the court shall be entitled to a jury trial, except that if a defendant subsequently waives his right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.
(c) Definitions.  For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):
(1) "Mentally ill." One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
(2) "Legal insanity." At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.
(d) Common law M'Naghten's Rule preserved.  Nothing in this section shall be deemed to repeal or otherwise abrogate the common law defense of insanity (M'Naghten's Rule) in effect in this Commonwealth on the effective date of this section.
[8] The other mental illness category is detailed in section 315, Insanity, which requires that the actor be legally insane at the time of commission of the offense. Section 315(b), Definition, provides:

(b) Definition.  For purposes of this section, the phrase "legally insane" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.
It is clear that since the M'Naghten rule continues to abide in Pennsylvania, a person may have a personality disorder without being mentally ill, and mentally ill without being insane, and of diminished capacity without falling into any of the mental disability categories.
[1] Voluntary manslaughter based on an imperfect self-defense is defined in 18 Pa.C.S.A. § 2503(b).
[2] The majority holds that the facts belie appellant's claim of self-defense and, instead, overwhelmingly demonstrate that appellant committed first-degree murder. The majority also finds appellant's theory as to self-defense to be incredible. In making these determinations, the majority has engaged in a fact-finding determination as to whether the evidence weighed in favor of appellant's defense. Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. Commonwealth v. Paquette, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973); Commonwealth v. Hamilton, 376 Pa.Super. 404 at 414, 546 A.2d at 90, 95-96. (1988). The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. Commonwealth v. Zapata, 447 Pa. 322, 290 A.2d 114 (1972). An appellate court, reviewing the cold record, cannot deny appellant relief based on its disbelief of his defense. Accordingly, review of the instant issue must focus upon whether sufficient evidence of self-defense exists and whether expert testimony would have been helpful to appellant's cause.
[3] Although the Supreme Court held that the trial court had erred by excluding this evidence at trial, the Court found the error to be harmless since the evidence was only relevant to reduce the charges to voluntary manslaughter, of which appellant had already been convicted. Id. at 336, 326 A.2d at 292.
[4] I find it appropriate to address three additional points made in the majority opinion. First, the majority would find that the evidence overwhelmingly supported the Commonwealth's version of the events. Had the jury had the benefit of hearing Dr. Levit's testimony, however, it could have still reconciled the Commonwealth's version of the events with appellant's mistaken belief that he was acting in self-defense.

Second, the majority finds that "Dr. Levit did not testify that appellant's underlying chronic condition resulted in such an exacerbated degree of stress in this case as to overcome appellant's will or judgment." Majority opinion at 9-10. Dr. Levit testified that appellant's disorder caused impaired judgment and a distortion of reality. Ultimately, the jury must determine whether appellant's judgment may have been sufficiently impaired so that he thought he was acting in self-defense. Commonwealth v. Hill, 427 Pa.Super. 440, 446, 629 A.2d 949, 952 (1993). Further, I concede that appellant's will was not affected by his disorder. The defense of self-defense assumes that the actor intended the results of his actions while defending himself. See 18 Pa.C.S.A. § 2503(b) (a person who intentionally kills under an unreasonable belief that the killing was justified commits voluntary manslaughter). The jury must then look to the actor's state of mind to determine the second element of self-defense  whether his actions were justified or whether he truly believed them to be justified. See Commonwealth v. Light, 458 Pa. at 335-36, 326 A.2d at 292 (expert psychiatric testimony highlights the psychological differences between justifiable homicide and voluntary manslaughter).
Finally, the majority would find that a diagnosis of paranoid personality disorder "does not provide appellant with a walking immunity from any charge of homicide higher than voluntary manslaughter" because such personalities are "extant throughout the population." Notwithstanding that these characterizations concerning the general population are unsupported by the record in this case, I do not deign to imply that appellant may only be convicted of voluntary manslaughter. Certainly the evidence is sufficient to convict appellant of first-degree murder. My point is that if the evidence supports a finding of voluntary manslaughter as well, the defendant is entitled to prepare a full defense to support his position.
[5] Under 18 Pa.C.S.A. § 308, evidence of voluntary intoxication may only be used to reduce murder from a higher degree to a lower degree; not to reduce murder to voluntary manslaughter.