J-S43034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN MAURICE MCDONALD | : | |
| | : | |
| Appellant | : | No. 249 MDA 2019 |

Appeal from the PCRA Order Entered January 16, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0003708-2015

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                     **FILED OCTOBER 22, 2019**

Appellant, John Maurice McDonald, appeals from the order entered in the Court of Common Pleas of Dauphin County dismissing his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546. Herein, Appellant raises multiple claims of ineffective assistance of trial counsel.  After careful review, we affirm.

The PCRA court aptly recites the relevant facts and procedural history, as follows:

RELEVANT PROCEDURAL HISTORY

The Commonwealth charged Defendant [hereinafter "Appellant"] with Murder, Possession of Firearm Prohibited, Firearms Not to be Carried without a License, and Harassment.  Bryan McQuillan, Esq., represented Appellant at trial.  On March 8, 2016, a jury found Appellant guilty of Murder in the First Degree and Firearms Not to Be Carried with a License.  The [trial court] imposed a life sentence without the possibility of parole for the charge of Murder

_____

*   Former Justice specially assigned to the Superior Court.

in the First Degree and a concurrent sentence of not less than 2 no [sic] more than 4 years imprisonment for the firearms charge.

On March 17, 2016, Appellant filed a Post-Sentence Motion, to which the Commonwealth filed an Answer on March 21, 2016. On March 25, 2016, [the trial court] denied Appellant's Motion for Post-Sentence Relief. Appellant filed a Notice of Appeal to the Superior Court on April 22, 2016. In a Memorandum Opinion filed April 20, 2017, the Superior Court affirmed Appellant's conviction. Appellant did not seek *allocatur* with the Pennsylvania Supreme Court.

On May 30, 2017, Appellant filed a *pro se* Petition for Relief under the [PCRA]. On June 8, 2017, [the PCRA court] appointed Michael Palermo, Esq., as counsel and granted an extension of time within which to file a counseled PCRA petition. Following unopposed requests for extensions of time, on January 22, 2018, Appellant filed the instant counseled Amended Petition. The Commonwealth asserted that the Amended Petition failed to include a signed certification pursuant to 42 Pa.C.S. § 9545(D)(1) as to witnesses Appellant intended to call at a PCRA hearing in support of claims of ineffectiveness of counsel. On May 11, 2018, Appellant filed a Certification of Counsel.

[On December 6, 2018, the PCRA court issued notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss Appellant's petition without a hearing. On January 16, 2019, the court entered a final order dismissing Appellant's petition. Appellant filed a timely appeal on February 8, 2019.]

FACTUAL BACKGROUND

On May 9, 2015, Shanelle Franklin arrived at Forever Nights, an after-hours bar in Harrisburg, at approximately 2:00 a.m. (Transcript of Proceedings, Jury Trial, p.86) (hereinafter "N.T."). After speaking with friends at the front of the bar, Ms. Franklin walked toward the restroom at the back of the bar. There, Ms. Franklin saw her cousin, Asia Bethea talking to Defendant [hereinafter "Appellant"]. N.T. at 87. Ms. Bethea asked Ms. Franklin to compare Appellant to Ms. Bethea's former boyfriend. *Id*. Ms. Franklin's response to the question angered Appellant. Appellant called her "a bitch" and the two argued. N.T. at 224. Ms. Franklin testified that she could understand Appellant and that Appellant did not slur his words. N.T. at 94.

As they argued, Appellant pushed Ms. Franklin in the face with an open hand. N.T. at 88. Ms. Franklin walked away to get security. *Id*. A security guard, along with the victim, Todd Dunlap, walked to the back of the bar to speak with Appellant. *Id*. Todd Dunlap told Appellant, "You've got to go. You can't be putting your hands on women. It's early in the evening and you're already starting." *Id*. Appellant argued and told Mr. Dunlap, "I ain't going no F-ing where." N.T. at 89. Appellant then swung a gun and struck Mr. Dunlap. Appellant did not fall as he swung the gun. N.T. at 95.

As Mr. Dunlap stumbled to the ground, Appellant shot him in the back of the head. N.T. at 90, 150. Ms. Franklin began screaming for someone to call police. Mr. Dunlap appeared to be alive for a few moments but expired before police arrived. N.T. at 91. Appellant stepped over Mr. Dunlap's body and walked out of the bar in a manner which Ms. Franklin described as "just normal." N.T. at 90. He did not run. *Id*. Ms. Franklin identified Appellant as the shooter. N.T. at 97

Asia Bethea saw Appellant walk out of the bar, get into his car and drive away. N.T. at 224. The disc jockey at Forever Nights, Abraham Reese, observed the events from approximately 4 feet away as he set up his equipment that night. N.T. at 70. He observed Appellant stand on his own without assistance as he argued with Ms. Franklin. N.T. at 79. When Mr. Reese heard the shot, he saw people scatter and run. N.T. at 71. Appellant walked away from Mr. Dunlap's body. N.T. at 73. Mr. Reese also identified Appellant in a police photo lineup as the shooter. N.T. at 78.

Another bar patron, Jasmine Easter, was seated at a table talking to friends when she heard the "pop" of a gunshot and saw a flash. N.T. at 108. Mr. Dunlap's body hit the table at which she was seated, causing it to flip over. N.T. at 108. Ms. Easter told police in a transcribed interview that the individual who fired the gun "walked over [Mr. Dunlap's body] and went outside." N.T. at 110-111. At trial, Ms. Easter identified Appellant as the shooter. N.T. at 112.

Appellant's cousin, Mariah Selvy, was also present at Forever Nights at the time of the shooting. She witnessed Appellant swing the gun at Mr. Dunlap then shoot him. N.T. at 196. Ms. Selvy testified that Appellant was high that night, but that she did not see him using drugs. N.T. at 202.

Pennsylvania State Police first arrived at the scene. Harrisburg Police Officer Nathan Ishman also responded following a call received at 2:24 a.m. N.T. at 120. Officer Ishman observed Mr. Dunlap's body at the back of the bar and a shell casing from a semiautomatic weapon a few feet away. Id. Officer Ishman did not see Appellant in the bar. N.T. at 129.

Harrisburg City Police Detective Christopher Silvio spoke to officers at the scene who provided Appellant's name as the suspect. N.T. at 158. Detective Silvio informed United States Marshalls. N.T. at 160. Police arrested Appellant in Baltimore, Maryland on May 26, 2015.

Forensic pathologist Wayne Ross, M.D., conducted an autopsy. Dr. Ross determined the cause of death to be a gunshot wound to the head and the manner of death to be homicide. N.T. at 147. Dr. Ross determined that the shot was fired from a distance of not less than three to four feet. Id.

Appellant testified at trial that on the night of the shooting, he used ectacy [sic], drank alcohol and smoked marijuana soaked in formaldehyde. Appellant recalled that he drank brown liquor and refilled his cup each time it was empty. N.T. at 231. Appellant recalled that prior to arriving at Forever Nights, he bought one bottle of liquor, "Ciroc," for himself and one for a friend for his birthday. N.T. at 232. Appellant recalled that he drove from a nearby bar, Double D's to Forever Nights. Id. Defendant denied any recollection of shooting Mr. Dunlap. N.T. at 240.

Trial Court Opinion, 12/6/18, at 1-5.

Appellant presents the following four questions for our consideration:

1. [Did] the PCRA court err[] by denying without a hearing, [Appellant's] claims that his counsel was ineffective by failing to develop the diminished capacity defense including the failure to retain/call supporting experts to set forth such a defense at trial[?]

2. [Did] the PCRA court err[] by denying without a hearing, Appellant's claims that his counsel was ineffective to file a pre-trial motion to suppress statements made by [Appellant] while in custody but without the benefit of **Miranda**[?]

- 4 -

3. [Did] the PCRA court err[] by denying without a hearing, Appellant's claims that his counsel was ineffective by failing to impeach the Commonwealth's witnesses when their contradicting and voluntary statements were available at trial of this matter[?]

4. [Did] the PCRA court err[] by denying without a hearing, Appellant's claims that his counsel was ineffective by failure to seek [a] voluntary manslaughter instruction after positive evidence of provocation at trial of this matter[?]

Appellant's brief, at 7.

We review an order denying a collateral relief under the PCRA to determine whether evidence of record supports the findings of the PCRA court and whether its legal conclusions are free of error. **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Id.** (quoting **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013)).

In this case, the PCRA court dismissed Appellant's petition without a hearing. There is no absolute right to an evidentiary hearing. **See Commonwealth v. Springer**, 961 A.2d 1262, 1264 (Pa.Super. 2008). On appeal, we examine the issues raised in light of the record "to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." **Id.**

Appellant raises challenges to trial counsel's stewardship. Counsel is presumed to be effective, and a petitioner has the burden to establish counsel's ineffectiveness. ***Commonwealth v. Reid***, 99 A.3d 427, 435 (Pa. 2014) (citing ***Commonwealth v. Miller***, 819 A.2d 504 (Pa. 2002)). To establish ineffective assistance of counsel, a petitioner must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel's action or inaction was not grounded on any reasonable basis designed to effectuate the petitioner's interest; and (3) counsel's action or inaction was prejudicial to petitioner. ***Commonwealth v. O'Bidos***, 849 A.2d 243, 249 (Pa.Super. 2004) (quoting ***Commonwealth v. Costa***, 742 A.2d 1076, 1077 (Pa. 1999)); ***see Strickland v. Washington***, 466 U.S. 668 (1984). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." ***Commonwealth v. Bedell***, 954 A.2d 1209, 1211 (Pa.Super. 2008) (quoting ***Commonwealth v. Bryant***, 855 A.2d 726, 736 (Pa. 2004)). If the claim is without merit, the court's inquiry ends, because counsel will not be deemed ineffective for failing to pursue a meritless issue. ***Commonwealth v. Hull***, 982 A.2d 1020 (Pa.Super. 2009).

In Appellant's first issue, he initially contends trial counsel ineffectively failed to develop a diminished capacity defense with supporting expert opinion. Appellant's claim fails because it is without arguable merit.

It is well-settled that in order to be entitled to an evidentiary hearing, a PCRA petitioner "must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel

may have, in fact, been ineffective. **Commonwealth v. Begley**, 780 A.2d 605, 635 (Pa. 2001). Here, Appellant failed to plead or make an offer to prove that he had an expert witness who would testify that he suffered from a diminished capacity during the time of the murder. Without such a proffer, this aspect to Appellant's first ineffectiveness claim fails.

Relatedly, Appellant contends that counsel was ineffective by failing to investigate and develop a "heat of passion" defense, and thereafter seek a voluntary manslaughter instruction, given the alleged provocation by the victim. To receive a "heat of passion" voluntary manslaughter instruction, the petitioner must demonstrate that there was evidence in the record that supports such an instruction. **Commonwealth v. Sanchez**, 82 A.3d 943, 979 (Pa. 2013). Specifically, evidence that demonstrates that at the time of the killing, the petitioner acted under a sudden and intense passion resulting from serious provocation from the victim. **Id**. at 979.

The ultimate test to determine whether provocation by the victim was sufficient remains, "whether a reasonable man who was confronted with the provoking events would become impassioned to the extent that his mind was incapable of cool reflection." **Commonwealth v. Hutchinson**, 25 A.3d 277, 314–15 (Pa. 2011) (quoting **Commonwealth v. Thornton**, 431 A.2d 248, 252 (Pa. 1981)). Neither words of provocation nor slight assault is sufficient to reduce murder to manslaughter. **See Commonwealth v. Sheppard**, 648 A.2d 563, 566 (Pa.Super. 1994) (serious provocation not established when victim struck defendant's brother and arguments ensued between defendant

and victim); ***Commonwealth v. Cartagena***, 416 A.2d 560, 563 (Pa.Super. 1979) (stating that a punch by the victim was not legally adequate provocation for the defendant to stab the victim).

Here, Appellant failed to meet his obligation to demonstrate that evidence in the record supported a provocation-based defense meriting a voluntary manslaughter instruction. Appellant directs our attention to witness statements that contain substantively consistent descriptions of the nightclub fight in question. All statements confirm that Appellant pushed a woman away from him, she sought assistance from club security, and the victim—who was not working security that night—and several others confronted Appellant about assaulting a woman. There is some conflict among the statements as to who initiated the physical altercation, but all agree that Appellant retrieved a handgun from his waistband and shot the victim in the head at the victim's first attempted punch.

Even if we read the proffered statements in a light most favorable to Appellant to permit the assumption, *arguendo*, that the victim attempted to swing first, we still find the statements would have been insufficient to warrant a "heat of passion" instruction under the above-referenced decisional law. Therefore, we discern no arguable merit to Appellant's claim that counsel was ineffective for failing to investigate adequately a "heat of passion" defense and seek a voluntary manslaughter instruction.

Appellant's next contention is that trial counsel ineffectively failed to seek suppression of statements Appellant made to detectives while in transit

from Baltimore, Maryland to the Harrisburg Police station without having received **Miranda** warnings. **See** Appellant's brief, at 35-45.

"[W]here a defendant alleges that counsel ineffectively failed to pursue a suppression motion, the inquiry is whether the failure to file the motion is itself objectively unreasonable, which requires a showing that the motion would be meritorious." **Commonwealth v. Johnson**, 179 A.3d 1153, 1160 (Pa. Super. 2018). "[T]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." **Commonwealth v. Watley**, 153 A.3d 1034, 1044 (Pa.Super. 2016) (citation omitted).

After careful review of the notes of testimony of Appellant's criminal trial, we concur with the trial court that Appellant has not demonstrated a reasonable probability that his verdict would have been more favorable had suppression of his statements occurred. Appellant's alleged statements while riding with the detectives were, on balance, not incriminating, as they consisted largely of his denials of having been at the club on the night of the fatal shooting.

To the extent Appellant contends his response, "Word," to the detective's suggestion that "there was no drug that would [cause] everybody . . . to tell the same version of what occurred[,]" was damning, we find his answer was, at best, of uncertain meaning. Moreover, such an answer was inconsequential given the unanimity of eyewitness testimony, in which

numerous eyewitnesses identified Appellant as the man who shot the victim, Todd Dunlap, Jr., at the Forever Nights nightclub in Harrisburg. We, therefore, reject this ineffectiveness claim.

In Appellant's remaining issue, he argues that counsel ineffectively failed to cross-examine one eyewitness adequately on a prior inconsistent statement. Specifically, Appellant contrasts eyewitness Shanelle Franklin's testimony at trial, where she said, "When Todd stumbled to the ground, [Appellant] came over and shot Todd," n.t. at 90, with her prior statement to police indicating that the victim did not fall before Appellant shot him.

Appellant baldly contends that counsel's failure to conduct cross-examination on this inconsistency undermined his diminished capacity and provocation-based defenses. As we have previously observed, however, Appellant has failed to support his diminished capacity defense, and we have rejected his theory of provocation in this case. Moreover, given the unanimity of eyewitness testimony against him, we disagree that counsel's failure to underscore the inconsistency in Ms. Franklin's testimonies was prejudicial. For this reason, we reject Appellant's final claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2019

- 10 -