J-S43004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHAGNA LEE BATTLE | : | |
| | : | |
| Appellant | : | No. 1953 MDA 2018 |

Appeal from the Judgment of Sentence Entered July 24, 2018
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0001946-2017

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:   **FILED: OCTOBER 16, 2019**

Appellant, Shagna Lee Battle, appeals the judgment of sentence entered in Dauphin County Court of Common Pleas, following his jury trial convictions for conspiracy to promote and promoting prostitution.[1]  We affirm.

The trial court opinion set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues on appeal:

> DID NOT THE TRIAL COURT ABUSE ITS DISCRETION BY FAILING TO GRANT [APPELLANT] A NEW TRIAL ON THE BASIS THAT THE GUILTY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE WHEN THE TOTALITY OF THE EVIDENCE WAS UNRELIABLE, CONTRADICTORY, AND INCREDIBLE?
>
> WAS THE IMPOSITION OF AN AGGREGATE SENTENCE OF 2½ YEARS TO 5 YEARS, TO BE FOLLOWED BY 5 YEARS OF

---

[1] 18 Pa.C.S.A. §§ 903, 5902(b)(1), (b)(3), respectively.

---

\*   Former Justice specially assigned to the Superior Court.

CONSECUTIVE PROBATION, CLEARLY UNREASONABLE, SO MANIFESTLY EXCESSIVE AS TO CONSTITUTE AN ABUSE OF DISCRETION, AND INCONSISTENT WITH THE PROTECTION OF THE PUBLIC, THE GRAVITY OF THE OFFENSES, AND [APPELLANT]'S REHABILITATIVE NEEDS?

(Appellant's Brief at 7).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Richard A. Lewis, P.J., we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed January 3, 2019, at 7-12) (finding: **(1)** evidence at trial established beyond reasonable doubt that Appellant and his partner controlled or supervised prostitution business operating out of their apartment; jury properly inferred that Appellant was in control of and/or supervised massage business with "happy ending"; testimony established that Appellant encouraged, induced, or otherwise caused another to become or remain in prostitution; additional testimony indicated that Appellant approached women on street, offered them opportunity to make money, took them back to his apartment and explained "business" to them; Appellant and his partner decided prices, rules, supervised who and when customers could enter premises, and shared in proceeds of "business"; it does not shock court's sense of justice that jury found Appellant guilty of promoting prostitution and related conspiracy; **(2)** for sentencing, court reviewed PSI report, trial testimony, Appellant's prior record score, as well as his history of assaultive

behavior toward women; sentence was not excessive, in light of underlying criminal offenses; sentence was reasonable, in light of Appellant's prior record score and his history of assaultive behavior).  Accordingly, we affirm based on the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2019



COMMONWEALTH OF PENNSYLVANIA    : IN THE COURT OF COMMON PLEAS

                                      : DAUPHIN COUNTY, PENNSYLVANIA

v.                                             :

                                      : No. 1946 CR 2017 (1953 MDA 2018)

SHAGNA LEE BATTLE,                : CRIMINAL MATTER

           Appellant/Defendant         :

## MEMORANDUM OPINION

Presently before this Court is the Appeal filed in the above-captioned matter. This opinion is written pursuant to Pa.R.A.P. 1925(b).

## PROCEDURAL BACKGROUND

Following a jury trial that concluded on May 24, 2018, Appellant was found guilty of one count of Conspiracy (Count 1) – promoting prostitution,[1] two counts of Promoting Prostitution (Counts 2 and 3) – owning a house of prostitution or a prostitution business,[2] and two counts of Promoting Prostitution (Counts 4 and 5) – encouraging another to become or remain a prostitute.[3] Thereafter, on July 24, 2018, the Defendant was sentenced at Count 1 to a term of state imprisonment of not less than 15 months nor more than 30 months; at Count 2 to a term of state imprisonment of not less than 15 months nor more than 30 months running consecutively to Count

---

[1] 18 Pa. C.S.A. 903.
[2] 18 Pa. C.S.A. 5902(b)(1).
[3] 18 Pa. C.S.A. 5902(b)(3). Appellant was found not guilty at Count 6 – PWI.

1

1;[4] at Count 4 to 60 months state supervised probation running consecutively with Count 2; and at Count 5 to 60 months state supervised probation running concurrently with Count 4. Appellant's aggregate sentence is 30 to 60 months in a state correctional institution, followed by 60 months of state supervised probation.[5]

On August 15, 2018, Appellant filed a Post-Sentence Motion, *Nunc Pro Tunc* and on August 16, 2018, Appellant's post-sentence motion was denied.[6] On November 2, 2018, Appellant filed a *pro se* PCRA Petition and on November 5, 2018, a counseled PCRA Petition was filed seeking reinstatement of Appellant's direct appellate rights.[7] On November 26, 2018, Appellant's direct appellate rights were reinstated and the Appellant was directed to file a Notice of Appeal within 30 days. On November 29, 2018 a Notice of Appeal was filed. In compliance with our 1925(b) order, Appellant filed a Statement of Errors Complained of on Appeal raising the following allegations of error:

1. The Court abused its discretion in finding that the jury's verdict was not against the weight of the evidence. The verdict was against the weight of the evidence so as to shock one's sense of justice.

2. The court's sentence was so manifestly excessive as to constitute an abuse of discretion.[8]

---

[4] For purposes of sentencing, Count 3 (Promoting Prostitution – owning a house of prostitution) merged with Count 2.

[5] Appellant was given time credit for 6 months and 25 days.

[6] In Appellant's post-sentence motion, he raised a Motion Challenging the Weight of the Evidence, a Motion to Modify Sentence, and a Motion for Permission to File Post-Sentence Motion *Nunc Pro Tunc*. In our August 16, 2018 Order, we permitted Appellant to file a post-sentence motion, treated the August 15, 2018 filing as a post-sentence motion, and denied Appellant's post-sentence motion. *See* Order filed August 16, 2018.

[7] The November 5, 2018 PCRA petition was filed by the Dauphin County Public Defender's Office

[8] Statement of Errors Complained of on Appeal filed December 24, 2018.

## FACTUAL BACKGROUND

In the instant case, the evidence presented at trial revealed that on or about October 18, 2016, then Detective Donald Heffner ("Agent Heffner")[9] was conducting a prostitution investigation. Transcript of Proceedings, Jury Trial, May 23-24, 2018, page 197 (hereinafter "N.T. at____"). Agent Heffner was part of the Vice and Organized Crime Unit for the Harrisburg Police Department and part of his job was investigating human trafficking and prostitution. N.T. at 195-96. On October 18, 2016, Agent Heffner was attempting to identify individuals involved in prostitution from a Backpage account.[10] Corporal Cornick, also a member of the Vice and Organized Crime Unit, responded to a Backpage ad (Commonwealth Exhibit 2) and started texting a number ending in 8990. N.T. at 198-99. This ad was included under a section referred to as "body rubs" and included a photograph of a girl in a leopard skin scarf, bra, and panties. N.T. at 201. The Commonwealth introduced the phone conversations between Corporal Cornick and the number ending in 8990. Commonwealth Exhibit 3. Corporal Cornick then went to 1807 North Second Street, second floor, and met with Krista Graulich (Graulich). N.T. at 204. There was an agreement for a sexual act for money.[11] N.T. at 204. As the other officers were entering the apartment,[12] the Appellant was exiting and walking away quickly. N.T. at 204-205. Graulich was then placed under arrest. N.T. at 205. The Detectives called the phone numbers used to set up the "massage" and the numbers ending in 8990 and 7481 began ringing. N.T. at 208. The Detectives confiscated both phones along with heroin found in Graulich's purse. N.T. at 209. Detectives also noticed a massage table pushed into the closet. N.T. at 213.

---

[9] At the time of trial, Agent Donald Heffner was employed as an agent with the Attorney General's Office.

[10] Backpage is like a craigslist where people can go to meet people for various reasons.

[11] A massage with masturbation at the end for $160.

[12] Detectives Nicolas Licata, Dennis Simmons, and Donald Heffner were part of the undercover operation. In total, there were four detectives involved.

3

Graulich later agreed to help the Detectives out and track down Shagna. Graulich agreed to a consensual call. N.T. at 222. The Detectives noticed that Ruth Gettel (Appellant's girlfriend) had set up a new Backpage ad with a listed number ending in 0516. N.T. at 223. They[13] called the number and eventually the Appellant returned the phone call. N.T. at 224 Graulich had a conversation with Appellant about employment again. *Id.* Appellant was later arrested on February 15, 2017 and a cell phone ending in 9247 was seized from his person. N.T. at 226-28. Through Agent Heffner, the Commonwealth also introduced several conversations between Graulich and Appellant regarding the setting up of appointments. *See* generally N.T. at 232-238.

Venecha Sanders (Sanders) testified that she was walking in downtown (Harrisburg) when the Appellant approached her and asked if she wanted to make some extra money. N.T. at 34. Appellant told her that she could make up to $700/day doing massages. N.T. at 37. Sanders then went with Appellant back to his apartment which he shared with his girlfriend, Ruth Gettel (Gettel). N.T. at 38. Gettel wanted Sanders to put lingerie on and take pictures for the ad on Backpage. N.T. at 39. Gettel, Sanders, and the Appellant discussed the "happy endings"[14] but Gettel and the Appellant told her that she would not get in trouble for it. N.T. at 39. Sanders testified that it was a requirement if she felt comfortable and that it was for tips. N.T. at 39. Additionally, Appellant and Gettel set the prices at $80 for a half hour and $160 for an hour along with $20 for a "happy ending". Sanders testified that she was given a personal cell phone but that Appellant would decide whether she could take the cell phone home or not. N.T. at 40-42. Half the money earned would go to Gettel and the Appellant. The "happy ending" was discussed prior to the massage. At times, the Appellant was mean and controlling. N.T. at 46. Sanders would also

---

[13] During testimony, Detective Heffner referred to "us" or "we" when referring to who called the number on the Backpage ad. We believe that Graulich was the one making these calls.

[14] Masturbation after the massage.

4

give massages at hotels. N.T. at 45, And, in October, 2015, Sanders along with Gettel's niece, Breann Durden were busted during an undercover operation. N.T. at 45, 50-51. Finally, Sanders testified that she would give the Appellant money directly and that she felt pressured by the Appellant to continue with the "happy endings." N.T. at 53-54.[15]

Krista Graulich was a heroin addict when she met the Appellant in the summer of 2016. N.T. at 62-63. Graulich was walking down 17th Street in Harrisburg when the Appellant stopped and asked for her number. N.T. at 66. Numbers were exchanged and Graulich called Appellant in a couple of days. N.T. at 67. Appellant picked her up and took her back to his apartment. N.T. at 68. Only the Appellant was present and Graulich's friend. N.T. at 69. Appellant explained the business to her. N.T. at 70. Graulich would be assigned a phone, she would have to take and post pictures on Backpage, people would call to set up appointments, and that all money would be split with the Appellant. *Id.* Appellant told her that she would do the massage and at the end there would be "a release" (handjob). *Id.* Graulich also testified that a hand job was part of the job and that Appellant told her that from the start. *Id.* Graulich testified to the price of the massage and that she had to wear something provocative. N.T. at 71. Customers would pay prior to the massage and Appellant would set up the appointments. N.T. at 75. Graulich also testified that Shagna offered her heroin. N.T. at 76. Finally, once Graulich was arrested, she cooperated with police and told them she was working with Gettel and Appellant. N.T. at 94-96. The Commonwealth also introduced Facebook conversations between Graulich and Appellant indicating that Appellant wanted his phone back. N.T. at 98-102. Commonwealth's Exhibits 4 and 5. The Commonwealth also played four different recordings between Graulich and the Appellant. N.T. at 104.

---

[15] Sanders identified the Appellant in Court. N.T. at 55.

5

Ruth Gettel testified that she has been dating Appellant for the past four years. N.T. at 125. Gettel, who gives massages for a living, decided to bring the massage business into her home. N.T. at 130. She testified that she hired employees in the summer of 2015 through Appellant. N.T. at 131. Gettel also testified that she and Appellant would take half the money that was made, that they would decide the prices and the rules. N.T. at 135. Gettel indicated that Appellant would act like a recruiter and that Appellant would sometime collect the money. N.T. at 136. Finally, Gettel testified that she is on probation for pleading guilty on August 30, 2017 to conspiracy to promote prostitution with Appellant. N.T. at 149.

Joshua Cesavice (Cesavice), a member of the PA National Guard Counter Drug Task Force, is a criminal analyst with the Harrisburg Police department. N.T. at 175-176. He is certified in mobile phone forensics (i.e. able to extract information from a cell phone). *Id.* Through Cesavice, the Commonwealth introduced multiple cell phone reports to various cell phones. N.T. at 180-185. Commonwealth Exhibits 9-13, 15-17.[16]

---

[16] These dumped cell phones showed that the dates that were used to set up Graulich's appointments links to the icloud phone or the same iphone number that Appellant was using.

6

## DISCUSSION

### 1.. Weight of the Evidence

The Appellant alleges that the jury's verdict was against the weight of the evidence. The standard of review, as indicated by the Pennsylvania Superior Court, when an appellant is challenging the weight of the evidence is well established:

> "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Widmer*, 744 A.2d at 751-52 (citation omitted). Our Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 753 (citation omitted). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. *Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.*" *Id.* at 751 (emphasis added) (citations omitted). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa.Super.1997) (citation omitted). Stated another way, and as the trial court noted, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.' " *Commonwealth v. La*, 433 Pa.Super. 432, 640 A.2d 1336, 1351 (1994), *appeal denied*, 540 Pa. 597, 655 A.2d 986 (1994) (citation omitted).

*Commonwealth v. Sullivan*, 820 A.2d 795, 805–06 (Pa. Super. 2003).

The crime of promoting prostitution is defined in the Crime Code, in relevant parts, as follows:

> **b) Promoting prostitution.-**A person who knowingly promotes prostitution of another commits a misdemeanor or felony as provided in subsection (c) of this section. The following acts shall, without limitation of the foregoing, constitute promoting prostitution:

(1) owning, controlling, managing, supervising or otherwise keeping, alone or in association with others, a house of prostitution[17] or a prostitution business;

(3) encouraging, inducing, or otherwise intentionally causing another to become or remain a prostitute;

18 Pa. C.S.A. § 5902(b)(1), (b)(3).

In the case at hand, the evidence established beyond a reasonable doubt that Appellant's apartment which he co-rented with his co-defendant Gettel was being used to house a prostitution business (i.e. wherein individuals would engage in sexual activity as a business). Appellant and Gettel put an advertisement on Backpage.com (a well-known website for those seeking sexual favors) with women clad in skimpy clothing advertising. The Commonwealth introduced, as Commonwealth's Exhibit 2, the Backpage ad claiming to "come see me for a great relaxing time" with a photograph of a girl in a leopard skin scarf and bra and panties. Agent Heffner also testified to the undercover operation that took place on or about October 18, 2016. Corporal Cornick responded to the Backpage Ad and started texting a number ending in 8990. Corporal Cornick was told to go to 1807 N. 2nd Street, went there, and met with Krista Graulich. Here, there was an agreement for a sexual act for money which was a massage with masturbation ("happy ending") for $160. After Corporal Cornick placed the money in the area, a takedown signal was given and undercover officers converged on the scene. As they were walking towards the front door, they noticed the Appellant exit and walk quickly away. Once inside, the officers called the phone numbers that were used to set up the massage and two phones began ringing. These phones were then confiscated and later dumped. Krista Graulich was taken under custody and agreed to cooperate with police in their investigation into Appellant. Graulich conducted a consensual call

---

[17] A "house of prostitution" is defined as "any place where prostitution or promotion of prostitution is regularly carried on by one person under the control, management or supervision of another." 18 Pa.C.S.A. §5902(f).

8

with the Appellant indicating that she wanted to take up employment again. The Commonwealth also introduced conversations between Graulich and the Appellant setting up conversations for "massages."

Venecha Sanders and Krista Graulich also testified at trial. Both girls testified that they were approached by Appellant while walking down the street. Appellant told them that he knew a way for them to make money doing massages. Sanders went with Appellant back to his apartment and met with Gettel who, along with Appellant, explained the business. Sanders had to put on lingerie and take pictures for the advertisement on Backpage. Sanders also testified that they (Appellant and Gettel) discussed performing "happy endings" (i.e. masturbation) for an additional $20. Appellant and Gettel also set the prices for the massages and set up the appointments. Half the money that Sanders and Graulich received went to the Appellant and Gettel. Additionally, at times, Appellant would be present to act as sort of security and make sure that he was getting paid. Sanders also testified that she felt pressured by Appellant to continue to give "happy endings" and that Appellant was mean and very controlling.

Ruth Gettel, co-defendant and Appellant's girlfriend, also testified that she gives massages for a living and decided to bring the massage business into the home. Gettel testified that she gained employees through Appellant. In other words, Appellant recruited the girls to partake in this "massage business." Gettel indicated that she and Appellant would take half the money that was made, that they both decided the prices and rules, and that they worked together. Gettel also testified that Appellant would sometimes collect the money. Finally, evidence was introduced that Gettel plead guilty and is on probation for conspiracy to promote prostitution.

Through Joshua Cesavice, a certified mobile phone forensics specialist, the Commonwealth was able to introduce the cell phone reports taken from the phones recovered and

9

owned by the Appellant and Gettel. These reports indicated Appellant's involvement in the massage business.

The evidence at trial established beyond a reasonable doubt that Appellant, along with Gettel, ran, controlled, or supervised the prostitution business operating out of their apartment. Appellant had the authority to control who and what time customers would enter the premises oftentimes setting up the appointments himself. The jury properly inferred from the evidence presented that Appellant was in control of and/or supervised the massage business with a "happy ending." Additional testimony was also presented for a jury to conclude that Appellant himself encouraged, induced, or otherwise caused another to become or remain a prostitute. Both Sanders and Graulich testified that it was Appellant who approached them on the street, offered them a way to make money, took them back to his apartment and explained the "business" to them.

In light of the testimony and evidence presented, it does not shock this Court's sense of justice that the jury found the Appellant guilty of the aforementioned crimes.

2. Manifestly Excessive Sentence

The Appellant alleges that the sentence was so manifestly excessive as to constitute abuse of discretion when this Court imposed an aggregate sentence of 2 ½ to 5 years by imposing consecutive sentences on two counts. We begin by noting the standard of review, as explained by the Pennsylvania Superior Court:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) *citing* *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999)(en banc).

10

As the instant sentence fell *within* the sentencing guidelines, Appellant's sentence must be evaluated to determine whether it was "manifestly excessive." This Court keeps the following principles in mind:

> "When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin,* 804 A.2d 1, 10 (Pa.Super.2002), *appeal denied,* 582 Pa. 671, 868 A.2d 1198 (2005), *cert. denied,* 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers,* 519 Pa. 88, 101–02, 546 A.2d 12, 18 (1988). *See also Commonwealth v. Tirado,* 870 A.2d 362, 368 (Pa.Super.2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Cruz–Centeno,* 447 Pa.Super. 98, 668 A.2d 536 (1995), appeal denied, 544 Pa. 653, 676 A.2d 1195 (1996) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).
>
> *Commonwealth v. Griffin,* 65 A.3d 932, 937-38 (Pa. Super. 2013) *citing Commonwealth v. Moury,* 992 A.2d 162, 171 (Pa.Super.2010).

Additionally, we look at the principles set forth in *Commonwealth v. Dodge,* 77 A.3d 1263, 1270 (Pa. Super. 2013):

> A defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges *if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence;* however, *a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question. See* [ ] *Moury,* 992 A.2d [at] 171–72 [ ] ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.").

11

Here, this Court reviewed the presentence investigation, the testimony that was presented at trial, the Appellant's prior record score and number of prior offenses committed (although not all resulting in conviction), and the assaultive behavior towards women, some of it of a violent nature. Accordingly the appellant was sentenced to an aggregate range of 2 ½ to 5 years. This sentence is not excessive in light of the criminal conduct at issue nor does the sentence appear patently unreasonable in light of Appellant's prior record score and assaultive behavior towards women.

For the foregoing reasons, it is believed that Appellant's allegations of errors are without merit and the judgment of sentence should be affirmed.

BY THE COURT:

_____
Richard A. Lewis, Judge

MEMORANDUM DATE: _January 3_, 2019

DISTRIBUTION: 1/4/19@ 8:18am
Ryan Lysaght, Esquire – District Attorney's Office (APPEAL) to
Kristie Falbo, Esquire – District Attorney's Office to
James J. Karl, Esquire – Public Defender's Office to
Shagna Lee Battle, Defendant, #NM6991, SCI Rockview, PO Box A, 1 Rockview Place, Bellefonte, PA 16823 mail
Court Administration – Criminal to
Clerk of Courts file
Pennsylvania Superior Court, Prothonotary mail
FILE COPY – Judge Richard A. Lewis

2019 JAN -3 PM 3: 23
DAUPHIN COUNTY PENNA

12